Olcott *v.* Tioga Rail Road Company.

---

## OLCOTT *vs.* THE TIOGA RAIL ROAD COMPANY. (NO. 1.)
## THE SAME *vs.* THE SAME. (NO. 2.)

Where a draft was dated at the principal office of the T. N. Co., signed by "J. R. W., Prest. T. N. Co.," directed to and accepted by "H. W. B. Treas." of another company, and upon its face contained the direction to "charge to motive power and account;" *Held* that it appeared upon the face of the instrument that it was, and was intended to be, the draft of the T. N. Co., and not of J. R. W.

A corporation has power to give a valid note, or draft, in payment of a debt, or on the purchase of property for legitimate use.

And if it can make a valid note, or draft, to turn out in the payment of a debt, it can make a valid indorsement upon the notes of others, which it has received in the course of its business, for the same purpose.

Even if the president of a corporation had not the necessary authority to bind the corporation by such instruments, originally, his long and uniform exercise of it, without objection, or dissent, from any one interested, will be sufficient, when his acts are within the scope of the powers of the body represented.

The official seal of a notary public, upon his certificate of the presentment and non-payment of a promissory note, and of protest and notice, verifies the whole official recital of facts, whether in one part or more, if all are on the face of the same paper thus impressed. And it makes no difference whether the impression of the seal is at the top of the recital, or recitals, or at the bottom, or in the middle.

So held where the presentment, the non-payment, and the protest were stated in one certificate, and the service of notice on the indorsers in another; both certificates being on the same page, and both signed by the notary,

Olcott *v.* Tioga Rail Road Company.

with his name and title of office; but there was only one seal or impression, on the page, and that was at the end of the first certificate.

The statute evidently contemplates that all the facts will be stated by the notary in a single paper or certificate. *Per* JOHNSON, J.

Where, by the terms of the agreement contained in a chattel mortgage, the mortgagee has the right to sell the mortgaged property to the highest bidder, that will fix the amount to be applied upon the debt by means of that security; and the balance will remain to be collected of the mortgagor by action.

It is, in effect, a stipulation on the part of the mortgagor that a sale to the highest bidder shall fix and establish the price and value of the property, for the purposes for which such property is mortgaged.

The mortgage transfers to the mortgagee the legal title to the property, and all that remains in the mortgagor is the mere right of redemption—a right to defeat the sale, by the payment of the debt to secure which the title has been transferred, and thus reinvest himself with the title.

On a sale to cut off this mere equitable right, the legal owner may bid, to protect the title already absolutely vested in him.

The sale, by virtue of a chattel mortgage, is wholly optional with the mortgagee. If the debt is not paid at the time specified, his title becomes absolute, so that no tender made afterwards will defeat it, and the mortgagor can, then, only redeem by the aid of a court of equity.

The mortgagee may then keep the property, without selling it under the mortgage, and in case he does so; if it be of sufficient value, it extinguishes the debt. But if it be of greater value than the amount of the debt, and there is no sale, the mortgagor has no legal claim for the excess of such value.

He can, in that case, maintain no action for the property, or for any portion of its value. The sale becomes absolute for the payment of the debt, and no trust, whatever, enures in favor of the mortgagor. So that there is no fiduciary relation between mortgagor and mortgagee, and no trust, except in the case of a surplus arising upon a sale under the mortgage. J. C. SMITH, J. dissented.

Where the property contained in a chattel mortgage has been regularly sold, under a power contained in the mortgage, and bid off by the mortgagee, and the amount of his bid duly credited upon the mortgage debt, evidence as to the *value* of the mortgaged property, is not admissible, in an action between the mortgagee (or his assignee) and third parties, for the purpose of compelling the mortgagee to account for the value of the property, instead of the *sum bid* by him, therefor.

APPEALS from judgments entered upon the reports of a referee in the above actions. *Action No.* 1, was brought to recover against the defendant, as drawer of a draft upon,

and accepted by, Hiram W. Bostwick, treasurer of the Tioga Coal, Iron, Mining and Manufacturing Company, to the order of Rogers, Ketchum & Grosvenor, for $9064.71, at 12 months, dated May 19, 1841, and payable at No. 65 Liberty street in the city of New York. *Action No.* 2, was brought to recover against the defendant as indorser of eight promissory notes, made by the Arbon Coal Company, in 1841, in the aggregate amounting to $21,000. The draft and notes had been assigned to the plaintiff. The referee reported in favor of the plaintiff, for the full amount claimed, in each action, less an amount realized upon a sale of certain chattels embraced in a mortgage from the Arbon Coal Company to Morris Ketchum, in trust for creditors. The drafts and notes in suit were among the debts thus secured. It appeared that the mortgaged property had been sold on a foreclosure of the mortgage, and bid off by the mortgagee for $14,074. This chattel mortgage contained a power of sale in case of default in payment. The mortgage had been assigned to the plaintiff, and was held by him at the time of the trial. A witness was asked the question, what was the value of the property embraced in the chattel mortgage. This evidence was objected to by the defendant's counsel, who insisted that inasmuch as the property had been taken possession of, leased and used up by Ketchum and his assignee, the plaintiff, the value of the property should be applied to the extinguishment of the debts secured by the mortgage. The plaintiff's counsel insisted that, as there had been a regular foreclosure of the mortgage, and no objection had been made, that the foreclosure was not regular, the sale to the trustee was a valid one. The referee decided that the property having been regularly sold, under a mortgage foreclosure, the mortgagor could only be credited with the amount for which it was sold, notwithstanding it was bid in by the mortgagee, and appropriated to his use, and therefore excluded evidence of the value of the property. To which decision the defendant excepted.

The actions were tried together, and the evidence in action No. 1 was, by stipulation, regarded as taken in case No. 2. In action No. 1, at the close of the evidence on the part of the plaintiff, a motion was made to dismiss the complaint ; and the grounds of that motion present the defendant's objection to a recovery upon the draft. They were as follows: 1. The draft is not the obligation of the Tioga Navigation Company, but of Wilson. 2. Wilson had no power to bind the company by this draft. 3. The plaintiff has failed to show that payment of the draft was legally demanded, or that sufficient notice to the drawer of non-payment was legally given to the company, or that protest for non-payment was legally made, for the reasons stated in the objections to the certificate of protest, before made. Also, for the additional reason that said James R. Wilson, at the time of the giving of the draft mentioned in the complaint, was not president of the company, because the term for which he was elected had previously, on the first day of January, 1840, expired, and no meeting of stockholders, nor any meeting of managers of said company were held between 1839 and 1844, at which he was, or could have been elected president, in accordance with the charter or by-laws of the company, or otherwise, lawfully. And also, because he was at the time of giving the said draft, disqualified under acts of the legislature of Pennsylvania — particularly section 3 of the act of 7th February, 1838 ; section 5 of act of 20th February, 1826, given in evidence by the plaintiff, from being president of said company, by reason of his having ceased to be a resident of Pennsylvania and become a resident of Albany, in the state of New York ; and because that notice of non-payment of said draft, alleged to have been received by said Wilson, at Albany, was nugatory so far as the defendant was concerned, he having ceased to be president of the company, or a resident of the state of Pennsylvania, and having no capacity to receive notices to affect or charge said company. 4. That the act of Wilson, in drawing the draft, was not au-

thorized by the company, in the first instance, or subsequently ratified by it in any manner ; and, moreover, was in contravention of the act of incorporation and supplementary act, and the by-laws of the company, with notice of which, the payers of said draft, being stockholders of said company, were chargeable. 5. That the alleged contract with Rogers, Ketchum & Grosvenor was the contract of Wilson and Bostwick, individually, and that the undertaking to give or draw the draft therein mentioned, was the individual engagement of Wilson, not binding on the company. 6. So far as Wilson undertook to bind the company for the purchase of a locomotive for the joint account of the Tioga Navigation Company, and the Tioga Coal, Iron, Mining and Manufacturing Company, and to pay therefor by drawing a draft for the price, he acted without authority, and did not bind the Tioga Navigation Company. 7. It did not appear that when the draft was drawn the Tioga Navigation Company existed as a corporation. 8. That the demand in suit was barred by the statute of limitations. 9. The legal presumption was that the draft had been paid. The referee denied the motion ; and the defendant's counsel excepted.

Similar objections were raised in action No. 2, and also overruled.

In action No. 2, the defendant's counsel objected that there was no sufficient proof to show that the defendant had been duly charged as indorser of the promissory notes ; the certificate of the notary public, of notice of protest to the indorser, not being under the seal of the notary. The certificate was as follows upon one of the notes, varied in the other cases, according to the dates, amounts, &c. viz :

" United States of America, State of New York, ss :

On the 31st day of December, in the year of our Lord one thousand eight hundred and forty-one, at the request of Ketchum, Rogers & Bement, I, H. E. D. a notary public, duly admitted and sworn, dwelling in the city of New York, did present the original note hereunto annexed, to the paying teller of

the Manhattan Company, at their banking house in this city, and demanded payment of the same, which was refused.

Whereupon, I the said notary, at the request aforesaid, did protest, and by these presents do publicly and solemnly protest, as well against the drawer and indorsers of the said note, as against all others whom it doth or may concern, for exchange, re-exchange, and all costs, damages and interests already incurred, and to be hereafter incurred for want of payment of the said note.

Thus done and protested, in the city of New York aforesaid, in the presence of John Doe and Richard Roe, witnesses. *In testimonium veritatis.*     H. E. D.
[L. s.]        Notary public for Union Bank,
  Attorney and counsellor-at-law, No. 44, Wall street.

United States of America, State of New York, ss :

I, H. E. D., a notary public, duly admitted and sworn, dwelling in the city of New York, do hereby certify that on the first day of January, 1842, notice of the protest of the before mentioned note was served upon the Tioga Navigation Company, by directing the same to James R. Wilson, prest., and depositing the same on that day in the post office, in the city of New York, so directed to him at Blossburgh, Tioga county, Pennsylvania ; and also by enclosing a like notice in a letter directed to the said James R. Wilson, and which, on that day, were deposited in the post office in the city of New York, directed to the said James R. Wilson, at Albany, New York ; and on that day a like notice, directed to the said James R. Wilson, was left at his office, No. 65 Liberty street, in the city of New York ; and also, by enclosing a like notice, directed to the said James R. Wilson, prest., in a letter directed to E. Hill, cashier, Stamford, Connecticut, and which were on that day deposited in the post office, in the city of New York.

H. E. D., notary public."

The referee overruled the objection, and admitted the certificates.

Olcott *v.* Tioga Rail Road Company.

The judgment rendered in favor of the plaintiff in action No. 1, was for $15,415.20. In the 2d action the judgment was for $36.596.

*John Maynard*, for the appellant.

*John K. Porter*, for the respondent.

JOHNSON, J.   The referee has found, as matter of fact, from the evidence before him, that the draft in question, in action designated No. 1, was drawn for the defendant by James R. Wilson, who was then its president, in his official capacity, and was used in the purchase of a locomotive engine for the defendant, who took and owned the same and used it upon its road, with full knowledge on the part of its officers and managers of the manner of its purchase; and that the defendant had ratified and confirmed the act of the purchase, and that of making the draft on its account and behalf.   In regard to the notes, in the action designated No. 2, the referee finds that they were all made and taken on account of a then existing indebtednesss from the maker, the Arbon Coal Company, to the defendant; and that they were used, after being indorsed by the defendant, to borrow and raise money for the purpose of paying its own debts; and that the defendant was in no respect an accommodation indorser.

It is claimed, on the part of the defendant, that the referee should have found the other way, and that the evidence before him does not warrant this finding of facts.   But it seems to me that it would have been far more difficult to vindicate the finding, had it been the other way.   The facts, as found, are in accordance with the testimony of two witnesses, each of whom was in a situation to know how the fact was, and each of whom testifies, unreservedly and unqualifiedly, and there is no witness and no evidence, as far as I can see, to show a contrary state of facts.   The statement made by the

witness Wilson, as treasurer of the Arbon Coal Company, nearly two years afterwards, relied upon apparently with so much confidence by the defendant's counsel, is at best but impeaching evidence, and proves nothing of itself one way or the other. Upon its face it appears somewhat inconsistent with the witness' testimony, but he undertook to explain the inconsistency and did so, it would seem, to the satisfaction of the referee. But whether he did so or not, his evidence, upon the main facts, is corroborated fully by the testimony of the witness Bostwick, and I do not see how the referee could well have rejected the testimony of both, as of no weight, without any thing in the shape of affirmative testimony in the counter balance. In short, there is no ground upon which this court can, according to well established rules, interfere with the finding of the referee, as to the facts from the evidence before him. The referee also finds that Wilson, as president, had authority to make drafts, and indorse notes, for such purposes.

As matter of law it is claimed, on the part of the defendant, that the draft in action No. 1, is not the draft of the defendant, but that of Wilson individually. The referee held that it was the draft of the defendant, and in this I think he was clearly correct. It is dated at the defendant's principal office, in Philadelphia, signed by "James R. Wilson, Prest. T. N. Co.," directed to and accepted by "Hiram H. Bostwick, Treas. Tioga Coal, Iron, Mining and Manufacturing Co.," and upon its face contains the direction to "charge to motive power and account." It thus appears plainly, as I think, upon the face of the instrument, that it is and was intended to be the draft of the defendant and not of the individual who drew and signed it. (*Bank of Genesee* v. *Patchin Bank,* 19 *N. Y. Rep.* 312. *Babcock* v. *Beman,* 1 *Kern.* 200. *Choteau* v. *Suydam,* 21 *N. Y. Rep.* 179. *Dewitt* v. *Walton,* 5 *Seld.* 571. *Many* v. *Beekman Iron Co.,* 9 *Paige,* 188.)

In addition to this, the evidence in the case shows affirm-

Olcott *v.* Tioga Rail Road Company.

atively and conclusively that the draft was in fact the authorized obligation of the company.

That the defendant has power to give a valid note or draft in payment of a debt, or in the purchase of property for legitimate use, has been settled not only in this court but in the court of appeals, in the case of *Mallory* against this defendant, our decision having, as it is understood, been affirmed in that court.

The indorsements upon the several notes, in action No. 2, purport upon their face to have been made by the defendant and are proved to have been made by its authorized agent or officer. Having been used to borrow money to pay debts, of course the defendant is bound if it has been properly charged by demand and notice. Certainly if the defendant can make a valid note or draft, to turn out in payment of a debt, it can make a valid indorsement upon the notes of others which it has received in the course of its business, for the same purpose.

As to the authority of Wilson, as president of the defendant, to bind it by such instruments for such purposes, the question upon the evidence is too plain for argument. Even if he had not the necessary authority, originally, his long and uniform exercise of it, without objection or dissent from any one interested, would be sufficient when his acts are within the scope of the powers of the body represented. (*Conover* v. *Mu. Ins. Company of Albany*, 1 *Comst.* 290.)

It is also objected, on the part of the defendant, that the evidence before the referee was insufficient to show that the defendant had been charged as indorser, by notice of the due presentment and the non-payment of the notes, by the maker. The objection is that the notice to the defendant, though under the hand, is not under the seal, of the notary by whom it is given. The statute (3 *R. S. 5th ed.* 474, § 35) provides that in all actions at law the certificate of the notary, under his hand and seal of office, of the presentment, non-payment and service of notice, shall be presumptive evi-

dence of the facts contained in such certificate. The fact of the presentment, the non-payment and the protest is in one certificate, and the fact of the service of notice on the defendant is in another, but both are printed upon the same page of a single paper, and both are signed by the notary performing the acts, with his name and title of office. There is but one seal or impression, however, on the page where these certificates are printed and filled up, and this is at the end of the first certificate, and of course at or before the beginning of the second, that of giving the notice. Above it are the words *"in testimonium veritatis."* It is claimed that this impression of the seal only applies to the first certificate, and verifies that and not the second. But it seems to me that the seal of office is sufficient for both certificates, even if they are to be regarded as separate instruments. But they are not necessarily so. They contain together an official recital of certain distinct and separate official acts, part of which are contained in one and part in the other, but which might as well have been all recited in one certificate as in two. It is these facts, thus recited and verified, which the statute deems proved until controverted, and not the mere formal instrument. And it can make no difference whether this impression of the seal is at the top of the recital, or recitals, or at the bottom or in the middle. The seal of office verifies the whole official recital of facts, whether in one part or more, if all are on the face of the same paper thus impressed. It is in fact but a statement of what had been done in two parts, and it seems to me that two seals to this statement would have been a work of supererogation. (*Reed* v. *Drake,* 7 *Wend.* 345.) The statute evidently contemplates that all the facts will be stated in a single paper or certificate.

The evidence offered, as to the value of the property contained in the chattel mortgage, was, I think properly excluded by the referee. The mortgage, as is conceded, had been regularly foreclosed, and the avails arising from the sale

duly credited upon the mortgage debt. The sale, in case of the non-payment of the debt, to the highest bidder, and the application of the proceeds to the payment of the debt which the mortgage was given to secure, is expressly authorized by the terms of the mortgage. Thus by the terms of the agreement the mortgagee had the right to sell to the highest bidder; and that was to fix the amount to be applied upon the debt, by means of that security, and the balance remained to be collected of the mortgagor by action. (*Case* v. *Boughton*, 11 *Wend.* 108. *Charter* v. *Stevens*, 3 *Denio*, 33. *Craig* v. *Tappin*, 2 *Sand. Ch.* 78.) It is, in effect, a stipulation on the part of the mortgagor that the sale to the highest bidder shall fix and establish the price and value of the property, for the purposes for which such property is mortgaged. It is insisted, however, that the purchase upon the sale having been by or for the mortgagee is void and does not prejudice, in any respect, the rights or claims of the mortgagor. In other words, it is claimed that a mortgagee cannot be a bidder at such a sale, even to perfect his existing title. If this were so, as between mortgagor and mortgagee, it does not follow that this defendant, which is not the mortgagor, can complain or interfere with the purchase. But such is not the law. The mortgage transfers the legal title to the property to the mortgagee, and all that remains in the mortgagor is the mere right of redemption. A right to defeat the sale, by the payment of the debt to secure which the title has been transferred, and thus reinvest himself with the title. It would be singular indeed if on a sale to cut off this mere equitable right, the legal owner could not bid to protect the title already absolutely vested in him. This has been, it is believed, the uniform practice ever since chattel mortgages had an existence, and is, as it seems to me, absolutely necessary to the protection of the vested rights of the mortgagee, and to prevent in many cases an undue sacrifice of his property, and the destruction of his security.

It may be that a person who holds property in pledge

merely by way of security for a debt, upon the sale of it as pledgee would not be allowed to purchase, and if he did that a court of equity would interfere and set aside the sale. Such a sale and purchase would, however, be voidable only, and not void, and until set aside would be conclusive between the parties. (*Edw. on Bail.* 260, 261. *Whitlock* v. *Heard,* 18 *Ala. Rep.* 776.) In such cases, however, the strict fiduciary relation exists. The legal title is in the pledgor, and the pledgee holds it as the property of the pledgor, simply by way of security, and when he sells he sells as the agent, servant or trustee of the owner of that property. Not so with the mortgagee. He does not hold the property of another; it is his own, to all intents and purposes, with the mere right of defeasance in another, and as to the vested title it is strict legal right and not a trust. In short he holds in his own right, and not in the right of another, which is the test of a trust. In case of a sale of the property, if there is a surplus, the mortgagee is in some sense a trustee for such surplus, though that is usually regulated by the terms of the mortgage, and is strictly, as here, part of the contract of sale. It is recoverable by action at law, and not like a trust fund, by suit in equity. The sale, by virtue of a chattel mortgage, is wholly optional with the mortgagee. If the debt is not paid at the time specified, the title of the mortgagee becomes absolute, so that no tender made afterwards will defeat it; and the mortgagor can then only redeem by the aid of a court of equity. The mortgagee may then keep the property without selling it under the mortgage, and in case he does so, if it be of sufficient value, it extinguishes the debt. But if it be of greater value than the amount of the debt and there is no sale, the mortgagor has no legal claim for the excess of such value. He can, in that case, maintain no action for the property, or for any portion of its value. The sale becomes absolute for the payment of the debt, and no trust whatever enures in favor of the mortgagor. So that there is no fiduciary relation between mort-

gagor and mortgagee, and no trust, except in the case of a surplus arising upon a sale under the mortgage.

Some stress was laid upon the argument by the defendant's counsel upon the provision of the statute, in case of a foreclosure of a mortgage upon real estate, by virtue of a power contained in such mortgage, which expressly confers upon the mortgagee and his assigns the right to purchase upon such foreclosure sale. But in such case the title to the land, until sale, is in the mortgagor like a pledge, and the mortgage is a mere lien by way of security for the debt, and the power of sale exercised is in the nature of an agency to dispose of the property for the mortgagor. Of course the agent or attorney exercising this power for another could not, upon general principles, purchase for himself without the consent of the mortgagor or the aid of the statute. This was so held in *Dobson* v. *Racey*, (4 *Seld.* 216,) where the sale was not by foreclosure but by the mortgagee privately, and in virtue of a power not in the mortgage. But the case of a chattel mortgage is wholly different. The mortgagee has the legal title from the beginning, which is rendered absolute and indefeasible at law by the failure to pay the debt, and the power of sale after the debt has become due and the title fixed and absolute, so far from being a power to be exercised for the benefit and advantage of the mortgagor, is generally given wholly for the benefit of the mortgagee, and for the purpose merely of fixing the *price or value* of the chattels to be applied upon the debt. It is given to the owner of the property, to be exercised at his option. The object of a notice of the sale is to enable the mortgagor to attend and see that the best possible price is obtained, and then if the mortgagee is the highest bidder his purchase is beneficial instead of being injurious to the mortgagor. But in no sense is this power in the nature of an agency or trust; it is a simple arrangement in the nature of an agreement by which the mortgagee may determine the price of the chattels in case he elects not to keep them in satisfaction of the debt, if they

should prove to be of sufficient value for that purpose, or not to keep them with the value undetermined, and to be fixed thereafter by litigation or otherwise. The property was sold by the owners when the mortgage was executed and delivered, and the price or value having been fixed by the sale under the power in the mortgage, according to the agreement, the mortgagors, had this action been against them, would not have been entitled to the evidence offered, and it was properly excluded. There is no pretense that the sale was not fair, and not free from all collusion and fraud.

I am of the opinion that none of the objections to the evidence upon the trial are well taken, and that the judgment should be affirmed.

WELLES, J. concurred.

J. C. SMITH, J. I concur in the result expressed in the opinion delivered by Justice Johnson in this case, while I dissent from a portion of his reasoning in respect to the question whether the mortgagee should account for the *value* of the mortgaged property instead of the sum *bid* by him therefor. As the mortgagee took a conveyance with a *power of sale*, I think he is to be regarded as a trustee for sale, (*Jickling's Anal.* 67, *note; Downes* v. *Grazebrook,* 3 *Mer.* 200,) and as such he would be disabled from purchasing, were it not for the fact that being interested to the amount of his mortgage, he is also a *cestui que trust,* and should be permitted to purchase in order to avoid a loss to himself by a sale to another at a less price. It may well be doubted whether the rule of equity against a trustee's purchasing the subject matter of his trust, can ever apply where the trustee stands in the relation of *cestui que trust* also.

Judgment affirmed.(*a*)

[MONROE GENERAL TERM, December 1, 1862. *Johnson, Welles* and *J. C. Smith,* Justices.]

(*a*) Decision affirmed by the Court of Appeals, September, 1863.