## AMERICAN TRUST CO. v. CANEVIN.

(Circuit Court of Appeals, Third Circuit. February 13, 1911.)

No. 1,403 (No. 77).

1. BILLS AND NOTES (§ 253*)—NEGOTIABLE INSTRUMENTS LAW—IRREGULAR INDORSEMENT.

Pennsylvania Negotiable Instruments Law (P. L. 1901, p. 203) § 64, providing that a person, not otherwise a party to an instrument payable to the order of a third person, is liable as indorser to the payee and to all ·subsequent parties, changed the prior Pennsylvania rule that an irregular indorsement of a third person imported a liability as second indorser and made such irregular indorser's liability prior to that of the payee.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 612, 613; Dec. Dig. § 253.*]

2. EVIDENCE (§ 459*)—PAROL EVIDENCE—DESCRIPTIO PERSONÆ—"TRUSTEE"— PERSONAL LIABILITY.

Pennsylvania Negotiable Instruments Law (P. L. 1901, p. 198) § 20, provides that where an instrument contains, or a person adds to a signature, words that he signed for or in behalf of a principal, or in a representative capacity, he is not liable on the instrument, if he·was duly authorized, but that the mere addition of words describing him as an agent or as filling a representative capacity, without disclosing his principal, does not exempt him from personal liability. *Held,* that where a Roman Catholic Bishop held title to the property of the diocese as trustee in accordance with the rules and regulations of the church, and for the purpose of raising money for the benefit of a congregation indorsed the note of the congregation as an irregular indorser with the word "trustee," after his name, he being authorized in his representative capacity to bind the property to the diocese, he was entitled to show, by parol, that he intended to sign in his representative capacity only, and that the payee and indorsee had knowledge of the fact, and that the addition of· the word "trustee" was not mere descriptio personæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2110; Dec. Dig. § 459.*

For other definitions, see Words and Phrases, vol. 8, pp. 7128-7133; vol. 8, p. 7822.]

Holland, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by the American Trust Company against Regis Canevin. Judgment for defendant, and plaintiff brings error. Affirmed.

Gordon & Smith, for plaintiff in error.

A. B. Reid, J. R. Cray, A. V. D. Watterson, and Chas. D. Gillespie, for defendant in error.

Before GRAY and LANNING, Circuit Judges, and HOLLAND, District Judge.

LANNING, Circuit Judge. This is an action by the American Trust Company against Regis Canevin as indorser of a promissory

---

note. The following is a copy of the promissory note with its indorsements:

$15,000.                                          New Salem, Pa., Feb. 26, 1908.
    One year after date ...... promise to pay to the order of Fidelity Funding Company, at the First National Bank of New Salem, fifteen thousand dollars, without defalcation.   Value received.
    [Signed]                     St. Thomas R. C. Congregation,
                                     By Rev. Ign. Ostaszewski, Treas. & Pastor.

    [Indorsed]                   St. Thomas R. C. Congregation at Footedale,
                                     By Rev. Ign. Ostaszewski, Pastor.
                                 Regis Canevin, Trustee.
                                 Fidelity Funding Co.,
                                     By P. J. Keiran, Vice Pres't.

After the note had been delivered to the payee, the Fidelity Funding Company, it placed its indorsement under the name of Regis Canevin and transferred the note before maturity and for value to the plaintiff, the American Trust Company. The action is against Canevin only, and he is sued as indorser.

. The form of the note presents the question whether there is, above the indorsement of the Fidelity Funding Company, one indorsement (that of the St. Thomas Roman Catholic Congregation at Footedale, verified by the signatures of Rev. Ign. Ostaszewski, Pastor, and Regis Canevin, Trustee), or whether there are two indorsements (one by the St. Thomas Roman Catholic Congregation at Footedale, verified by the signature of Rev. Ign. Ostaszewski, Pastor, and the other by Regis Canevin, Trustee). The affidavit of defense, however, expressly admits that, before the note was delivered to the Fidelity Funding Company, there was an oral agreement that the defendant should indorse it, although it is further said that the agreement was that the indorsement should be "as trustee for said congregation." And the case was tried on the theory that the defendant's signature constituted a separate indorsement. Consequently we must dispose of the case upon that theory.

Prior to the enactment by the Pennsylvania Legislature of the negotiable instruments law of May 16, 1901 (P. L. 1901, p. 194), the courts of the state of Pennsylvania held that an irregular indorsement, like that before us, imported a liability as second indorser, unless a different liability could be established by competent written evidence; parol evidence not being admitted because of the Pennsylvania statute of frauds. Slack v. Kirk, 67 Pa. 380, 5 Am. Rep. 438; Eilbert v. Finkbeiner, 68 Pa. 243, 8 Am. Rep. 176; Temple v. Baker, 125 Pa. 634, 17 Atl. 516, 3 L. R. A. 709, 11 Am. St. Rep. 926; Central Nat. Bank v. Dreydoppel, 134 Pa. 499, 19 Atl. 689, 19 Am. St. Rep. 713. Under that rule such an indorser, on payment of the note to a holder obtaining title through the indorsement of the payee, might recover from the payee as first indorser regardless of the actual order of the indorsements, provided the payee could not establish by proper written evidence a prior liability on the part of the irregular indorser. Under that rule, therefore, if the word "trustee" be rejected as a mere descriptio personæ, Canevin would be liable to the plaintiff as second indorser.

But section 64 of the negotiable instruments law declares:

"Where a person, not otherwise a party to an instrument, places thereon his signature in blank, before delivery, he is liable as endorser in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties. * * * "

This statutory rule modifies the previous rule in Pennsylvania by making the liability of an irregular indorser, of the kind now before us, prior to that of the payee.

But the question remains: Must the word "trustee" be rejected as a mere descriptio personæ, or may the defendant show, by parol evidence, that he intended, by adding the word "trustee" after his name, to make a restrictive indorsement as trustee for the St. Thomas Roman Catholic Congregation at Footedale?

Section 20 of the negotiable instruments law is as follows:

"Where the instrument contains or a person adds to his signature words indicating that he signed for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

This section was construed in Birmingham Iron Foundry v. Regnery, 33 Pa. Super. Ct. 54. In that case the note sued on was signed "Catasauqua Rubber Company of Penna., Wm. W. Wilson, Secy. and Treas.," the payee was "Birmingham Iron Foundry," and the indorsement, which was in blank, was "Jas. Regnery, Prest." In the supplemental affidavit of defense it was averred that the plaintiff knew that James Regnery was the president of the Catasauqua Rubber Company, "and that when he indorsed his name as president on said note it was known to the plaintiff that it was a restrictive indorsement and was not intended to bind the indorser individually." On a rule to show cause why judgment should not be entered against the defendant for want of a sufficient affidavit of defense, the trial court discharged the rule, holding that parol proof of the defense set up was competent. When the case reached the Superior Court, it said, after quoting section 20 of the negotiable instruments law:

"The last clause, in terms at least, is simply declaratory of the established law; it introduces no new rule, and the rule that it does embrace is obviously not a complete statement of the law whereby the question of the personal liability of one who signs in the manner described may be determined. The 'mere' addition of certain words will not exempt from personal liability; but the statement of the law in this form, instead of in the form of an affirmative declaration that doing this or that shall create a personal liability, indicates that the Legislature did not intend to establish a fixed and rigid rule to be applied without regard to other facts, and particularly the intention of the parties to the instrument. The words imply that a signing in the manner described, taken in connection with other facts, may exempt from personal liability to the payee in the instrument. As there is nothing in the context to show the conditions under which there will be such exemption, resort must necessarily be had to the authoritative decisions in which such conditions are described. Presumably, the Legislature did not intend to abrogate the law, which, under the decisions cited in the opinion of the learned judge below, was applicable to such a state of facts as is set forth in the original and supplemental answers. The material clause of the supplemental answer is quoted in his opinion, and in connection with that should be read the explicit averment of the original answer that the plaintiff took, received,

and acquired the note upon the credit and as the undertaking of the Catasauqua Rubber Company, and consented to, and acquiesced in, and recognized the indorsement thereupon as that of the said company through its president, the defendant. The fact that the construction contended for by the appellee's counsel would give the instrument no additional value by reason of the indorsement would properly be considered in determining as to the truth of the appellee's averments. Upon the trial of the case it would be a reason for scrutinizing the testimony with care. But, whatever doubt may be created as to the defendant's allegation by this construction, it would not be sufficient to warrant us in holding that the affidavits taken together are insufficient to prevent summary judgment."

In Kerby v. Ruegamer, 107 App. Div. 491, 95 N. Y. Supp. 408, it appears that Kobbe and Manneck were erecting new buildings on lands in Brooklyn. Finding themselves unable to complete the improvements, they conveyed the property to the three defendants in trust to complete the buildings, settle claims against them, rent, sell, or mortgage the property, and apply the proceeds to the claims of the creditors, paying the surplus, if any, to Kobbe. The note sued on was given by the defendants for materials used in making the improvements. To their names, as makers, they added the words "as trustees, etc." The plaintiff, who was the payee, knew all the facts concerning the trusteeship of the makers, whom he sued personally. The Supreme Court said:

"The purpose of section 39 of the negotiable instruments law [Laws 1897, c. 612], which provides that, 'where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized, but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability,' is limited to putting the payee of such a note in possession of the knowledge that in the execution and delivery no personal liability was intended to be assumed by the makers; and where, as in this case, the payee knows that the makers are trustees, and the objects and purposes of their trust, as well as their powers thereunder, and has contracted with them in their representative capacity and furnished certain property to be used in furtherance of their trust duties and requests a note as an evidence of the indebtedness so created, it is not necessary, as to him, and the makers are not required (to relieve themselves from personal liability on such note), to repeat to him in writing upon the face of the instrument, or orally, information that he already possesses."

In Megowan v. Peterson, 173 N. Y. 1, 65 N. E. 738, the payees brought suit upon a promissory note made by "Charles G. Peterson, Trustee." The firm of Johnson & Peterson had become insolvent. The creditors appointed Peterson as trustee to manage the business. Thereupon Johnson conveyed all his interest in the partnership property to Peterson. The note sued on was given by Peterson to plaintiff for lumber purchased by Peterson and used by him in the erection of buildings which the firm had contracted to erect. The action was against Peterson individually. His defense was that the note was given, and understood by the plaintiffs to have been given, in his representative capacity, and that he was not personally bound. At the trial the plaintiffs insisted that they were entitled to go to the jury on the controverted question whether the plaintiffs gave credit to the defendant in his representative capacity, or as an individual. The trial court, however, directed a verdict for the defendant. The Court

of Appeals, after referring to the section of the negotiable instruments law above quoted, said:

"In this case, as we have seen, the defendant signed the note and then added to his signature the word 'trustee.' He did not, in the instrument itself, disclose the fact that he was trustee for the creditors of Johnson & Peterson, so that, under the provisions of the statute, he would become personally liable upon the note unless he could show that at the time of the delivery of the note to the plaintiffs he disclosed the fact that the consideration for which the note was given was for the benefit of the creditors of Johnson & Peterson, and that he gave the note as the trustee for such creditors. It is contended on behalf of the plaintiffs that his representative character must be disclosed upon the face of the note. This may be so in so far as innocent purchasers for value are concerned, but as to the payees named in the note we think a different rule prevails. * * * We do not understand that the statute to which we have alluded was designed to change the common-law rule in this regard, which is to the effect that, as between the original parties, and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was given may be shown."

In many cases a trustee has no power to bind his trust estate. In many other cases he has such power. If, in a case where he has the power, he enter into a contract, adding to his name the word "trustee" merely, he will nevertheless be personally liable unless the party with whom the contract is made understands that he intends to bind only the trust estate and not himself. If there be such an understanding, we see no reason why the liability of the person acting as trustee should not be limited according to the intention of the parties. In Taylor v. Davis, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163, it appeared that the defendants, who had signed a contract as "Trustees of the Cairo City Property," had undertaken to pay a conceded balance due to the plaintiff's intestate whenever there should be a certain surplus of trust funds in their hands sufficient for that purpose, and that they had had such surplus and had used it for other purposes. The court held that they were personally liable for the breach of their undertaking. The strong language of that case to the effect that a trustee is not an agent, and that when one contracts as a trustee he is personally bound, must be read with the particular facts of the case in mind. Indeed, the court there said that:

"If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate."

It is not said that the stipulation must in every case be expressed on the face of the contract.

In the light of these authorities, we think it was competent for the trial court in the present case to inquire whether the indorsement by Regis Canevin of the note here in suit was understood between him and the Fidelity Funding Company to be an indorsement pledging only the credit of the property which he held in trust for the St. Thomas Roman Catholic Congregation at Footedale, and, if so, whether the plaintiff accepted the note from the Fidelity Funding Company with notice of that fact. There is uncontradicted evidence in the case that the defendant Regis Canevin is the Roman Catholic

Bishop of the diocese of Pittsburgh; that the rules and regulations of the Roman Catholic Church in that diocese require the bishop to act' as the trustee of all Roman Catholic Church properties within his diocese; that the property of the St. Thomas Roman Catholic Congregation at Footedale is in Fayette county; that on February 8, 1905, the common pleas court of Fayette county, by its order, appointed Bishop Canevin, the successor of Bishop Phelan, then deceased, "trustee of the various pieces of real estate within Fayette county, owned by the Roman Catholic congregations, associations and institutions, within said county"; that the title to the real estate of St. Thomas Roman Catholic Congregation thereupon became vested in Bishop Canevin as trustee for that congregation; that, in accordance with the rules and regulations of the Roman Catholic Church in the diocese of Pittsburgh, the pastor and a committee of the congregation at Footedale applied, on March 1, 1908, to Bishop Canevin for permission to borrow, from the Fidelity Funding Company, for the purpose of paying off an indebtedness created in the improvement, of its buildings and property, the sum of $15,000; that on the same day the congregation applied to the Fidelity Funding Company by a written application for a loan of $15,000, to be secured in part by a mortgage on its real estate; that the congregation agreed to obtain the written authority of the bishop for the loan; that the Fidelity Funding Company accepted the application on March 13, 1908; that the note in suit represented the same indebtedness which the mortgage was to secure and was delivered to the Fidelity Funding Company, with the defendant's indorsement thereon, after the defendant had approved the application; and that, notwithstanding no money was ever advanced to the congregation, possibly because no mortgage had yet been delivered, the Fidelity Funding Company, on July 30, 1908, transferred the note to the plaintiff as collateral security for a loan.

We have no doubt but that the officers of the Fidelity Funding Company who transacted the business with the Footedale Congregation had actual notice that the title to the real estate of the congregation was vested in the bishop, and that his consent to borrow the $15,000 was necessary. In any event, the Fidelity Funding Company could maintain no action on the note against the defendant, for the reason that it never gave anything for it. While that fact is no defense, as against the present plaintiff, it appears that when Mr. Fessenden, president of plaintiff company, was negotiating with Mr. Keiran, vice president of the Fidelity Funding Company, for the note, Mr. Fessenden learned from Mr. Keiran that the defendant was bishop of the diocese of Pittsburgh. The following excerpt from Mr. Fessenden's cross-examination is pertinent:

"Q. Did he (Mr. Keiran) not inform you that he (the defendant) was the Bishop of the Roman Catholic Diocese in Pittsburgh?

"A. He did.

"Q. And he signed and indorsed the note in that capacity for the property of the parish under the rules of the diocese in Pittsburgh?

"A. He did."

In his deposition taken previous to the trial, Mr. Fessenden further testified as follows:

"Q. Well, you had no idea then that his signing his name, as you thought as Bishop of Pittsburgh, made him personally liable, did you? It was not on any personal responsibility of his that you made the loan, was it?

"A. No, I don't think it was."

With these facts before the court below, it submitted the case to the jury to determine whether the defendant should be held personally liable. Their verdict was that he should not, and on that verdict judgment was entered in the defendant's favor.

In Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665, where judgment was entered against the defendant on default upon a check which he had signed "W. G. Williams, V. Prest.," and a bill was filed to set aside the judgment on the ground of surprise, Mr. Justice Bradley said:

"The ordinary rule undoubtedly is that if a person merely adds to the signature of his name the word agent, trustee, treasurer, etc., without disclosing his principal, he is personally bound. The appendix is regarded as a mere descriptio personæ. It does not of itself make third persons chargeable with notice of any representative relation of the signer. But if he be, in fact, a mere agent, trustee, or officer of some principal, and is in the habit of expressing, in that way, his representative character in his dealings with a particular party, who recognizes him in that character, it would be contrary to justice and truth to construe the documents thus made and used as his personal obligations, contrary to the intent of the parties."

The negotiable instruments law has been enacted in a large number of our states. Its uniform construction is most desirable. We are not dealing now with the indorsement of an executor, or administrator, or testamentary trustee, who, ordinarily at least, has no power to bind his trust estate by a contract enforceable in a court of law, but with the indorsement of one who holds, in trust, the property of a religious society which, observing the rules and regulations of the society, he may sell or mortgage, or subject to liability for the payment of debts incurred by him in his representative capacity. In the present case, the society applied to the bishop for permission to borrow $15,000 from the Fidelity Funding Company. The application was made in the manner required by the rules and regulations governing the society. The bishop, under those rules and regulations, had the authority to approve the application and, as trustee for the society, to indorse the note on which it was intended to obtain the loan. The twentieth section of the negotiable instruments law declares that:

"Where * * * a person adds to his signature words indicating that he signed * * * in a representative capacity, he is not liable on the instrument if he was duly authorized, but the mere addition of words describing him * * * as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

Here, the authority was complete, and the question submitted to the jury was whether the plaintiff knew that the indorsement was intended to be a restrictive one carrying with it merely the credit of the property of the society held in trust by the defendant. We think such a submission was in accord with the construction given to the section by the courts of New York and Pennsylvania above referred to. Mr. Fessenden admits that when he accepted the note in suit for the plaintiff company he knew that the defendant was the Roman Catholic

Bishop of Pittsburgh, and that he did not understand that the bishop was personally bound by his indorsement. He gave credit to the property which the bishop represented as trustee and not to the bishop personally. To construe the indorsement, in such circumstances, as the personal obligation of the defendant, is contrary to the intent of the parties, and, we think, contrary to the intent of the twentieth section of the negotiable instruments law.

Our conclusion is that the judgment of the Circuit Court should be affirmed, with costs.

HOLLAND, District Judge, dissents.