# CHARLESTON.

FIRST NATIONAL BANK OF SALEM v. WINNIE M. JACOBS.

Submitted tFebruary 17, 1920.    Decided March 2, 1920.

1. EXECUTORS AND AMINISTRATORS—*Executor May Renew Testator's Note.*

An executor may, in the exercise of a reasonable discretion consistent with the diligent and careful administration of the estate, the creditor consenting, postpone payment of an indebtedness created by the testator in the form of a negotiable note, and for that purpose renew such note to afford opportunity to pay it out of the assets of the estate.   (p. 655).

2. SAME—*Executor May Renew Testator's Note by Signing in Representative Capacity and Thus Avoid Personal Liability.*

In the renewal of such a note the executor may, in order to avoid personal liability for the debt, sign the note in his representative character, and if in so doing he discloses by appropriate terms the name of the testator or estate for which he assumes to act, the estate, not the executor personally, is bound thereby.   (p. 654).

3. BILLS AND NOTES—*Maker in Representative Capacity Not Personally Liable.*

Under the provisions of section 20 of the Negotiable Instruments Law (section 20, ch. 98A, Code), where an instrument contains, or a person adds to his signature, words indicating that he signs in a representative capacity, he is not personally liable thereon if he was duly authorized to execute it.   (p. 656).

Error to Circuit Court, Marion County.

Action by the First National Bank of Salem against Winnie M. Jacobs.   Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Harry Shaw,* for plaintiff in error.

*James A. Meredith,* for defendant in error.

LYNCH, JUDGE:

To reverse a judgment for plaintiff in an action on a promissory note holding defendant primarily liable, though she signed it in her representative character as executrix of the will of her deceased husband, defendant prosecutes this writ.   The note

was given in renewal of a joint and several note executed by deceased and four others during his lifetime, and, as the correspondence between the parties shows, was executed by her in her representative capacity with the consent of the plaintiff. The note reads:

"$5,000.                         Salem, West Virginia,
                                   January 19, 1916.

Ninety days after date, we or either of us promise to pay to the order of the First National Bank of Salem Five Thousand Dollars, without offset and for value received.

WINNIE M. JACOBS,
*Exec. of Geo. M. Jacobs, deceased."*

The comakers of the former note likewise joined in the execution of the renewal note, their signatures following hers.

To support her contention that she is not liable personally on the instrument, defendant cites section 20, ch. 98 A, Code, which provides: "Where the instrument contains, or a person adds to his signature words indicating that he signs for and on behalf of the principal or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as agent or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

Since defendant in signing the note has disclosed the person or estate which she represents; she clearly comes within the description of the first half of the section, and, therefore, whatever may have been the common law rule upon the subject, is not liable personally on the instrument, provided she "was duly authorized" to execute it. The question of her authority as executrix to execute a note in renewal of one executed by her deceased husband during his lifetime is the determining point of the case. If she possessed such authority, the statute declares that she is not liable thereon personally.

The will confers upon her no express authority in this regard. There is, however, a provision requiring that she "shall within a reasonable time after my decease sell a sufficient amount of my property, either personal property or real estate,

or both, to pay off and discharge all my just debts;" thereby charging her with the care and discharge of his obligations. In connection with such general authority, does there also exist any implied duty or power sufficient to warrant her in executing a renewal note in lieu of one which the deceased himself had made?

It may be conceded at the outset that there is in general no authority to create new debts against the estate, and if the representative executes a note creating a new obligation, he or she is liable thereon personally. But here there was created no new debt—merely the execution of a note to represent an already existing obligation. The duty of discharging his debts imposed by the will carries with it by implication, if not by express words, the privilege of exercising some discretion with respect to the time and manner of payment. The representative is expressly authorized by the will to obtain funds sufficient to meet and discharge his obligations by the sale and disposal of his real and personal property; and this duty the law itself imposes in the absence of express testamentary provision. This necessarily accords to the representative a certain discretionary power to continue and renew such debts till satisfactory arrangement can be made for the accumulation of funds sufficient to meet them. If no such power existed, forced sales to meet maturing obligations frequently would be necessary, and at times possibly when serious loss to the estate might be suffered as a result. Of course this power to renew and continue the indebtedness of the deceased is not without its limitation, for reasonable diligence consistent with careful administration of the estate must be exercised. But when the creditor is willing to extend time by renewal, and the representative in the honest and diligent administration of her trust thinks it best to renew a debt, she may do so by an instrument signed in her representative capacity and disclosing the estate intrusted to her care, without personal liability thereon. Such renewal note does not create a new indebtedness against the estate, but merely continues an existing obligation until more advantageous time for payment arrives. In accordance with this view it has been held that where a personal representative executes a note for the purpose of acknowledging an indebtedness of the estate, he may show this, by other than parol evidence, in exoneration of his liability. *Stirling* v.

85 W. Va.

*Winter,* 80 Mo. 141. And the rule is laid down broadly in *Brown* v. *Farnham,* 55 Minn. 27, that if the executor contracts to do what it is his duty to do in his representative capacity, he is not personally bound. See also Woerner, Amer. Law of Administration (2d Ed.) *757.

Having discussed the implied authority of a representative of the deceased to execute notes in renewal of those executed by the latter during his lifetime, let us turn to the question of the personal liability of the representative thereon. That the estate of the deceased remains liable for the obligation is clear. *Crim* v. *England,* 46 W. Va. 480. In that case the court said, point 5 of the syllabus: "If there is a valid demand binding assets of a decedent, it is not discharged merely by reason of the fact that the executor gives a note therefor signed by him, with the addition to his name of the words, 'Executor of —————, deceased.'" Whatever the liability of the representative may have been at the common law, the provisions of section 20, ch. 98A, commonly designated the Negotiable Instruments Law, relieve him from personal liability if he signs in a representative capacity, disclosing his principal or the estate represented, and possesses the authority to execute the instrument.

In construing the identical section the Supreme Judicial Court of Massachusetts in *Jump* v. *Sparling,* 218 Mass. 324, said: "Under the law previous to the enactment of the negotiable instruments act, the defendant corporation would not have been held on this note. It would have been, not the note of the corporation, but simply the personal note of the two individuals who signed. * * * A change in the law in this respect has been wrought by that act. * * * These words (of the section) plainly imply that if the person signing a promissory note adds to his signature words describing himself an agent or as occupying some representative position, which at the same time discloses the name of the principal, he shall be exempted from personal liability; while if he omits the name of the principal, though adding words of agency, he will be held liable personally and the words of agency will be treated simply as descriptio personae. In this respect the common law rule of this commonwealth, whereby agents bind themselves by a form of signing a note such as the one at bar, even though act-

ing with authority, is abrogated." For decisions to the same effect, see: *Chelsea Exch. Bank* v. *First United Presbyterian Church,* 89 Misc. 616, 152 N. Y. Supp. 201; *New England Electric Co.* v. *Shook,* 27 Col. App. 30; *Wilson* v. *Clinton Chapel etc. Church,* 138 Tenn. 398; *Bank of Corning* v. *Nimnich,* 122 Ark. 316; *Chatham Nat. Bank* v. *Gardner,* 31 Pa. Super Ct. 135; Brannan's Negotiable Instruments Law (3d Ed.), §20, p. 69, and cases cited.

Though evidently not necessary to be considered in view of the express language of the statute, yet the correspondence between the plaintiff and defendant's comakers of the note concerning its renewal and deferment of payment and the character of the signature to be attached by defendant, and the act of plaintiff in retaining the note having the signature of the testator thereto and the reason given for such retention, disclose a purpose on the part of the bank not to forego its right to hold the estate liable for the debt and not defendant personally liable therefor. The first letter advised the bank of the approaching maturity of the note renewed and of the death of the testator, and requested the privilege of renewal for an additional period, with the suggestion that Mrs. Jacobs would sign the renewal "as executrix." To this letter the bank promptly replied: "Under the circumstances we will accept renewal this time with the understanding that the note will be reduced considerably at maturity. Please have Mrs. Jacobs sign as executrix of Geo. M. Jacobs, deceased, and forward renewal to us at your earliest convenience, and oblige." In answer thereto the same joint maker wrote: "Inclosed find $5,000 note in renewal of note of George M. Jacobs, myself and others, due today. Mrs. Jacobs has signed same as executrix of her husband;" to which the bank again replied: "We are in receipt of renewal of the George M. Jacobs note for $5,000 and we would prefer to pin the old note to the renewal in order to show that the note signed by Mrs. Jacobs was issued in lieu of the original note. Trusting this will be satisfactory to all parties concerned, we remain," etc. The same note was renewed the second time by the same parties under the same signatures and with like addition to the name of the executrix, with a similar request as to the form of her signature and for

with a similar request as to the form of her signature and for the liberty of retaining in its possession, and for the same reason, the note carrying the signature of the decedent. It is upon this renewal the action was brought. The verdict upon which judgment against Mrs. Jacobs stands was directed virtually by the court in an instruction requested by the bank. This we think was such palpable error as necessitates a reversal of the judgment and remand of the case for such further proceedings as the parties may elect in conformity with what we have said.

*Reversed and remanded.*