## SOUTHERN SUPPLY CO. *vs.* CHARLES McC. MATHIAS.

*Signature—In Representative Capacity—Lack of Authority— Effect—Note of Receiver.*

Code, art. 13, sec. 39, providing that where the instrument contains, or a person adds to his signature, words indicating that he signs on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized, does not under all circumstances impose a personal liability on one who without authority signs a promissory note in a representative capacity.                              p. 260

The statute does not prevent persons with full knowledge of all material facts dealing with one acting in a representative capacity, from agreeing with him that he shall not be personally bound by contracts executed by him in that capacity.  p. 260

In cases where the rights of a holder in due course are not involved, persons who take a promissory note signed by one in a representative capacity, with knowledge that he was not authorized to sign it, may agree that he shall not be personally liable thereon.                                     · p. 261

One who accepts a note signed by a receiver, knowing that the receiver executed the note only as receiver, and had no intention of binding himself personally, cannot hold the receiver personally liable because it subsequently appears that he and the receiver were mistaken as to the receiver's authority to execute it.                                      p. 261

In an action on a promissory note, executed by the receiver of a corporation for a debt of the corporation, *held* that the evidence showed that the note was executed by the receiver as such, that he had no intention of binding himself personally, that these facts were known to the payee and plaintiff indorsee, and that the execution of the note was a mere bookkeeping transaction, which did not affect the rights of the parties.
                                            pp. 261-263

The testimony of the payee of a note, signed in the name of a corporation "by C. M. M., Receiver," that he thought that the signature of the note was the personal signature of C. M. M., *held,* in view of such payee's apparent business experience, to be incredible.                                    pp. 263, 264

*Decided January 23rd, 1925.*

Appeal from the Circuit Court for Montgomery County (URNER, C. J., and WORTHINGTON, JJ.).

Action by the Southern Supply Company against Charles McC. Mathias. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*James Morfit Mullen,* with whom were *Talbott & Prettyman* on the brief, for the appellant.

*Leo Weinberg,* with whom was *Robert B. Peter, Jr.,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On October 2nd, 1920, Charles McC. Mathias was, by an order of Circuit Court No. 2 of Baltimore City, appointed receiver for the Columbian Construction Company, and on October 4th, 1920, he qualified as such receiver by filing in that court his approved bond.

The Columbian Construction Company was at that time engaged in the construction of sixteen houses on land owned by it on the Reisterstown Road and Oakmont Avenue, in Baltimore City. It had been contemplated that the cost of constructing the houses would be paid from the proceeds of certain mortgages on the property, but prior to the receivership, when the houses were about half completed, its funds failed and it was unable to go on with the construction.

In that extremity Messrs. Emory L. Coblentz and Charles McC. Mathias, who were stockholders of the company, came to its aid, and by personally endorsing certain of its obligations, made it possible for the receiver to complete the houses.

When Mathias was appointed receiver the company was indebted to Frock Brothers, who had contracted to install the plumbing and heating in the houses for $13,000. Their contract had not then been completed, but they were unwilling to proceed unless they received some assurance that they would be paid for their work. The receiver then, according to the testimony of George W. Frock, one of the brothers, said to them: "We all would be sure to get our money; at that time they owed us in the neighborhood of $3,000 on an unpaid note, and the balance of the work to be done was about $7,600. Mr. Mathias said at the meeting that we would get our money; what we did was under the jurisdiction of the court, and we thought we would only have a chance of losing between five and six hundred dollars." After that they went ahead and satisfactorily completed the installation of the plumbing and heating systems in the houses. Some time after the completion of these houses Frock Brothers demanded the payment of the balance due them under their contract, and informed the receiver that they needed money and were being pressed by the Southern Supply Company for payment for materials furnished them by it. It was suggested that the receiver give a note for the balance due them, which could be endorsed to the Southern Supply Company on account of their indebtedness to it. Mathias went to the Southern Supply Company, explained the situation to it and it agreed to accept a "receivership note," and Mathias as receiver thereupon executed a promissory note to Frock Brothers for $3,426, dated January 17th, 1921, payable in sixty days, which was signed in the following manner, "The Columbian Construction Company, by Charles McC. Mathias, Receiver," which note the payees indorsed to the appellant in this case, and were credited on its books with

the proceeds thereof. The note was not paid at maturity, and it then appeared that the authority of Mathias to execute the note as receiver was disputed. Thereupon the holder asserted that Mathias was personally liable on the note, on the theory that he had signed it as "receiver" of the Columbian Construction Company without authority, and that, therefore, he was individually bound, and upon his refusal to pay it the appellant brought this suit on it against him in his personal and individual capacity. The action was tried in the Circuit Court for Montgomery County, and at the conclusion of the testimony the court directed a verdict for the defendant, and from the judgment on that verdict this appeal was taken.

The principal question which we are called upon to consider, therefore, is whether the evidence in the case was legally sufficient to establish a cause of action against Mathias personally on the note sued on.

The appellant's contention involves these propositions: (1) That the appellee had no authority to execute the note in question as a receiver, and that therefore (2) he is personally liable thereon under section 39 of article 13, C. P. G. L. In our view of the case it is unnecessary to pass upon the first proposition, and we will for the purposes of the opinion assume that Mathias was not authorized to execute the note in his capacity as receiver, and will pass, therefore, to the second and controlling question in the case, which is whether he incurred a personal liability on the note when without authority he signed it as receiver for the Columbian Construction Company. Section 39, which reads as follows: "Where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized, but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability," is identical with section twenty of the Uniform Negotiable Instruments Act, proposed by the National Conference of Commissioners on

Uniform State Laws, and has been the subject of judicial consideration in a number of cases which are collected in *Uniform State Laws, Annotated*, and the supplement thereto, annotated by Charles Thaddeus Terry. We have examined these cases, and in our opinion neither the statute itself nor the cases construing it go as far as the appellant's contention in this case, which is that "it is an unescapable alternative of the above quoted section that a person signing a negotiable instrument in a representative capacity is personally liable, if he had no authority so to do." The statute does not under all circumstances impose affirmatively a liability upon one who, without authority, signs a promissory note in a representative capacity, but it exempts from responsibility one who so signs if duly authorized. It therefore leaves the situation in respect to a person signing a promissory note in a representative capacity without authority under the circumstances of this case exactly as it was before the act was adopted. This conclusion seems inevitable from the language of the statute itself. The question before us, considered irrespective of the statute, may be thus stated: Did Mathias incur a personal responsibility when he signed the note as a receiver without authority, if the payee and the holder both knew and intended that he should incur no personal responsibility thereby?

In *Boyle v. Rider,* 136 Md. 286; *Gill v. Carmine,* 55 Md. 339, and *Knipp v. Bagby,* 126 Md. 461, this Court recognized and adopted the principle that, although a trustee even with general powers of management is bound personally by the contracts he "may make as trustee, though he designates himself as such," nevertheless where the parties to the transaction intended that the trustee should not be personally liable, that the general rule would not apply.

It seems clear that the statute was intended to reach and correct hardships resulting from the application of the general rule stated in these cases, and that it was not intended to prevent persons with full knowledge of all material facts, dealing with one acting in a representative capacity, from

agreeing with him that he should not be personally bound by contracts executed by him in that capacity. *American Trust Company v. Canevin,* 184 Fed. 657; *Gill v. Carmine,* 55 Md. 341; *Crawford Neg. Inst.* 54.    There is no doubt but that under such circumstances a representative executing a promissory note would not be personally bound if he was duly authorized to execute it, and there seems to be no apparent reason why the same rule should not apply where he was not authorized, if the parties so agree with knowledge of that fact, in cases where the rights of a holder in due course are not involved.    If in such a case as this the creditor knew that the receiver in executing the promissory note in question did so only as receiver and had no intention of binding himself personally and accepted the note with that knowledge and that understanding, certainly he ought not to be permitted, when it appears that both he and the receiver were mistaken as to the receiver's authority to execute it, to hold the receiver liable, on a contract which he knew the receiver never intended to make, and which in fact he did not make.    Kansas National Bank v. Bay, 62 Kan. 692, 54 L. R. A. 408.

We will now turn to the evidence bearing upon the question of whether the note was executed by Mathias as receiver.

George L. Henck, treasurer of the Southern Supply Company, when asked about the note, after referring to the fact that Frock Brothers were indebted to them for materials, said: "Subsequently they brought Mr. Mathias in our office and Mr. Mathias agreed finally to give us a receivership note; we asked for cash and he went away promising to give us a receivership note for this amount of money, and a few days afterwards Mr. Frock brought in this note.    Q. What, if anything, was said by Mr. Mathias as to him having any authority to sign the note?    A. I don't recall anything he said about the note.    My impression was that it was a receivership note.    I felt that they could not go ahead without

due course, and we were perfectly willing to receive a re-ceivership note."

George W. Frock, one of the firm of Frock Brothers, tes-tifying to the same matter, said: "I saw Mr. Mathias in Mr. Hudgins' office, and Mr. Mathias said the money gotten out of the houses had been used for other purposes, and the only source of payment was to take a note; and when I seen Mr. Mathias he said he would go down to the Southern Supply Company and fix it up; and Mr. Mathias said he was going to give us his note as receiver. I believe Mr. Mathias had to get back to Frederick that afternoon, and I think he took the note back with him to Frederick, from Mr. Inge's, and after-wards mailed it to me, and I took it down to the Southern Supply Company and indorsed it over to them. * * * That he asked Mr. Mathias to indorse it, and he said he would; that he trusted the man to his honesty, thinking that was what he was getting. That he said that in the presence of Mr. Inge. That when the note came it was not indorsed by him on the back; that he signed as Columbian Construction Company by his name, and witness was so anxious to get it he turned it over to the Southern Supply Company. That Mr. Inge was present; he thinks also Mr. Marshall; he would not say for sure. Mr. Inge was there. That the note did not come the next day, but came two or three days later, and was sent from Frederick, that he said expressly that he would indorse it himself individually. That witness had previ-ously seen notes that he had indorsed, and was thinking the same thing was coming to them. That he did not just infer Mr. Mathias was going to indorse it personally, he just took it at Mr. Mathias' own word; that the work had then been done; that he did not send it back for Mr. Mathias' individ-ual indorsement, because he thought he had it, that otherwise he never would have taken the note. He said the only thing he could do is to give his note. He said the money was all gone, and the only way to pay us was to take his note, and personally indorsed; that he was to give his note as receiver, and then add his personal indorsement; that he mailed it to

witness and witness took it for granted that it was a note as receiver, that witness understood that his signature on the note represented personal liability." On the 20th of May, 1921, Frock Brothers, in a letter to Mathias, in part said: "We remember that The Suthern Supply Company asked you for your personal indorsement on the note you gave them on our account, but we had a glimpse of a note you gave another company which undoubtedly bears your personal endorsement, so that we cannot help wondering how much worse off we are than the favored fellow."

This testimony, which was offered by the appellant, is not qualified or contradicted by the evidence offered by the defendant, and in our opinion conclusively shows (1) that the note was executed by Mathias as receiver, (2) that he had no intention of binding himself personally by it, and (3) that those facts were known both to Frock Brothers and to the appellant, and (4) that the execution of the note was a mere bookkeeping transaction which in no way changed or affected the rights of the parties. The statement by the witness, George Frock, that Mathias said he would endorse the note personally, is immaterial, because when the note was received Frock Brothers knew that it did not bear his personal indorsement, and long after they had received it they upbraided him because he had not endorsed it personally, since he had personally endorsed notes for other creditors.

The conclusion we have stated is moreover supported by the uncontradicted physical facts of the case. At the time the notes were given the work of Frock Brothers had been finished, and the houses completed. Mathias personally was under no obligation either to Frock Brothers or to the Southern Supply Company, and there was no apparent reason why he should personally have assumed the debts of a receivership estate which was, to say the least, in a doubtful financial condition. We could not accept the statement of the witness George W. Frock, even if it were relevant, that he thought the signature of the note was the personal indorse-

ment of Mathias. It is incredible that a person with his apparent business experience and intelligence should have been so misled as to believe that a signature reading "The Columbian Construction Company, by Charles McC. Mathias, Receiver," was the individual and personal signature of Charles McC. Mathias, and the letter of May 20th, 1921, of Frock Brothers shows that no such mistake was made. There is nothing in the record which could justify us in imputing fraud to the receiver, or in assuming that he personally misled the appellant or Frock Brothers as to his right to execute the note. The receivership proceedings were matters of public record, and the extent of Mathias' authority was known to the appellants as well as it was to Mathias. It knew that the receivership estate had no funds, it gave no new credit on account of the note, but it was willing to take it in the hope that sufficient funds might be realized from sales of its property to make it good. And while it is unfortunate that the contractors who gave valuable labor and furnished material for the benefit of the estate should lose what they had justly earned, that is no reason why they should hold the receiver personally liable on a contract which they well knew he had personally never made.

The record contains two exceptions. At the close of the whole case the plaintiff offered five prayers which the court refused, and the defendant two which were granted, and these rulings are the subject of the second exception. The granted prayers withdrew the case from the jury and directed a verdict for the defendant, and for the reasons stated we find no error in that ruling, and it therefore becomes unnecessary to discuss the plaintiff's prayers. The first exception relates to the admission in evidence of a letter from Frock Brothers to the receiver. The letter was both material and relevant, and we find no error in the ruling admitting it. From what we have said it follows that the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*

BOND, C. J., filed the following separate opinion, in which
PARKE, J., concurred:

I agree in the affirmance of the judgment on the ground
that the undisputed evidence in this particular case shows
that the parties all understood that payment of the note was
to be made only out of funds of the corporation which were
in the receiver's hands, or might come into them, and that the
note was to add nothing to the possibility of payment from
that source, but was merely to put the situation in written
form. That being the case, I think the receiver did not in-
cur personal responsibility on his note, even though it was
unauthorized. But I have been unable to agree with some
of the statements of principle on which the decision is
founded. In the first place, the opinion rejects the conten-
tion that one who signs a negotiable instrument in a repre-
sentative capacity without authority to do so is rendered per-
sonally liable by section 39 of article 13 of the Maryland
Code, originally section 20 of the Uniform Negotiable In-
struments Law. The discussion of the several authorities on
this law at the time of its first publication makes it clear that
the section was framed with the deliberate intention of im-
posing that personal liability. The discussion, generally
known as the Ames-Brewster controversy, will be found re-
produced in full in Brannan's Negotiable Instruments Law
(3rd Ed.), pages 418 to 549. It appears that Crawford, who
made the first tentative draft, adopted his form of the section
from the English law, which made no reference to personal
liability, but that the commissioners rejected this and adopt-
ed the present form from the German Exchange Law, and
that they preferred the latter because of the imposition of
personal liability. The whole discussion assumed this lia-
bility to be imposed and proceeded from that point to argue
the wisdom of it. All except Ames approved it. So far as
I have discovered, the clause has been considered in only
three cases. In *Tuttle v. First Nat. Bank,* 187 Mass. 533,
the court construed it as just stated, saying, page 535: "Be-
cause of the absence of authority, and notwithstanding the

recital in the body of the note, and form of its execution, the promise was his personal obligation enforceable against him while living, and after his death against his estate." And this was the construction adopted in *Eisinger v. Murphy Co.,* 48 App. D. C. 476, and 52 App. D. C. 197. In *Haupt v. Vint,* 68 W. Va. 657, 661, although dealing with a note executed before the adoption of the statute, so that the question did not arise, the court, replying to an argument on it, suggested a contrary construction. The obligation thus imposed on representatives of one kind and another is an important safeguard for persons with whom they may trade, and I have not seen any reason for adopting a construction which would do away with it.

The opinion further states that there is no reason to hold the receiver here personally liable if he lacked authority to sign as such, because the parties, with full knowledge of all the material facts, agreed that he should not be so liable. The material fact in this situation would be the fact that the receiver was not authorized to sign. I do not see any evidence of actual knowledge on the part of the appellant of that lack of authority, and I am not ready to accept as a correct principle that the notice which one dealing with a receiver is in other connections construed to have of the limits of the powers of that receiver can have the effect of relieving him of the personal responsibility imposed by the statute for executing a note as receiver without authority. See *Tuttle v. First Nat. Bank, supra.* The only agreement that the receiver should not be personally liable is, it seems, such as may be deduced from his refusal to add his personal indorsement and the acceptance of the note without it. But if this were sufficient to relieve of the statutory liability, there would be very little effectiveness allowed to the provision, for a signing in the representative capacity needs little more in any case to make it amount to a refusal to sign in a personal capacity, and that little more must be present in a large number of cases. As I see it, so long as the dispensing with a personal indorsement is accompanied by an assumption of authority

to execute as representative, the dispensing with the personal indorsement has no effect upon the statutory responsibility. A waiver of the latter liability could be founded only on an agreement taking account in some way of the possibility of lack of authority, and there was no such agreement here.