## R. D. JOHNSON MILLING COMPANY *v.* MARY GRACE BROWN

[No. 69, October Term, 1937.]

*Decided January 12th, 1938.*

The cause was submitted on briefs to BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Albert A. Doub, Jr.,* and *Doub, Doub & Doub,* for the appellant.

*Morgan C. Harris* and *Harry I. Stegmaier*, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order passed by the Circuit Court for Allegany County, In Equity, making perpetual an injunction previously granted, by which the appellant, R. D. Johnson Milling Company, its agents, servants, and attorneys, were enjoined from selling certain real estate belonging to the appellee, Mary Grace Brown.

For some years Abraham Thomas Brown had conducted a grocery business in Cumberland, Allegany County, Maryland. He died intestate in 1933, and his widow, Mary Grace Brown, qualified as administratrix of his estate. Prior to his decease he was indebted to R. D. Johnson Milling Company, who held his promissory note for approximately $185. That obligation had become due prior to June 26th, 1934, on which date, at the request of the representative of the R. D. Johnson Milling Company, Mrs. Brown, as administratrix of Abraham T. Brown's estate, executed a renewal confessed judgment note for $185, payable to the order of R. D. Johnson Milling Company one month after date. The Brown estate was insolvent, the note thus given by his administratrix was not paid at maturity, and on November 16th, of the same year, the payee secured a judgment by confession against "Mary Grace Brown, Administratrix in the estate of Abraham T. Brown." This judgment was entered by authority of the Circuit Court, who, in its order, specified "this judgment to bind assets in the hands of the Administratrix." Subsequently, the R. D. Johnson Milling Company filed a petition in the case referring to the above notation and alleged that, since the defendant, Mary Grace Brown, administratrix, executed the note sued upon without any authority of the orphans' court, she herself had become personally liable on that obligation. It accordingly prayed the passage of an order rescinding the notation above mentioned, and the court, without any notice to Mrs. Brown, on the same day

modified the judgment by striking therefrom the notation. The judgment creditor later obtained a writ of *fieri facias* upon its judgment, and the sheriff of Allegany County levied upon certain real estate belonging to Mrs. Brown individually, and advertised it for sale under the writ. These facts were alleged in the plaintiff's bill, upon which the preliminary injunction, later made perpetual, was granted. In addition, the plaintiff further proved that the R. D. Johnson Milling Company filed its confessed judgment against Abraham T. Brown's estate in the Orphans' Court of Allegany County. From this statement of facts, it becomes necessary to determine and apply the law.

Appellant contends that the act of Mrs. Brown in executing the renewal note as administratrix of her deceased husband's estate without authority cannot bind the estate; that the words "Administratrix, Abraham T. Brown Estate" are therefore merely *descriptio personae,* and hence the note must bind her individually. In support of the contention thus advanced, it relies upon the familiar doctrine that one who undertakes to make a contract on behalf of a principal whom he has no power to bind thereby becomes personally liable to the other party thereto. *Curtis' Excx. v. Bank of Somerset,* 7 H. & J. 25; *Keener v. Harrod,* 2 Md. 63; 11 *R. C. L.,* pages 166-169 and 294.

The facts in the two Maryland decisions above quoted present entirely different situations from those here under consideration. In the first of those cases, the court was dealing with a judgment obtained on a note purchased by the executors of Thomas Curtis, and by one of them indorsed to the bank, and it was held that judgments against the executors on contracts made by them after the death of their decedent were properly *de bonis propriis,* notwithstanding they had represented themselves as contracting in a representative capacity. The second case involved an action of a real estate brokerage firm to recover money claimed to be due in effecting a sale of certain land, and it was held that one who undertook

to do an act as agent for another without possessing any authority therefor from the principal or, possessing such authority and exceeding his powers, would be personally responsible to one with whom he dealt.

It will be observed that the facts in those cases present outstanding examples for application of the general rule, which, however, is not without its limitations. 11 *R. C. L.*, sec. 178, page 168. The principle is now embodied in section 39, article 13 of the Code, section 20, Uniform Negotiable Instruments Law, and a consideration of the case notes found in volume 5, *Uniform Laws Ann.*, pages 124 to 130, demonstrates the wide divergence of opinion of appellate courts in its construction. Many cases there cited hold that, even when one without authority adds his signature to an instrument indicating that he signs on behalf of a principal or in a representative capacity, he is not personally liable to the other if the latter had full knowledge of his lack of authority. *Eliason State Bank v. Montevideo Baseball Assn.*, 160 Minn. 341, 200 N. W. 300; *Seasongood v. Riddle*, 18 Ohio App. 88; *Adams v. Swig*, 234 Mass. 584, 125 N. E. 857; *Wilson v. Clinton Chapel, etc.*, 138 Tenn. 398, 198 S. W. 244; *American Trust Co. v. Canevin*, C. C. A., 184 Fed. 657; *Megowan v. Peterson*, 173 N. Y. 1, 65 N. E. 738.

In *Salem First National Bank v. Jacobs*, 85 W. Va. 653, 102 S. E. 491, it was held that an executor, in giving a renewal note of the testator, had avoided personal liability for the debt by signing the note in his representative character, if in so doing he disclosed by appropriate terms the name of the testator or estate for which he assumed to act.

This court, in the late case of *Southern Supply Co. v. Mathias*, 147 Md. 256, 128 A. 66, 67, held that section 39 of article 13 of the Code did not prevent persons with full knowledge of all the material facts, dealing with one in a representative capacity, from agreeing with him that he should not be personally bound by contracts executed by him in that capacity. In that case, Mathias had, by order of the Circuit Court No. 2 of Baltimore City, been

appointed receiver for the Columbian Construction Company, which was indebted to Frock Brothers for installation of plumbing and heating apparatus for certain houses under construction. Frock Brothers in turn were indebted to Southern Supply Company for materials used in and upon the houses, and the receiver gave them a note which they indorsed to the supply company. The receiver had no authority to execute the note, and it was contended that for this reason he was personally liable to the holder, but Judge Offutt, speaking for this court, after reviewing the history of section 39 (section 20, Uniform Negotiable Instruments Act), and several decisions thereunder, said:

"The statute does not, under all circumstances, impose affirmatively a liability upon one who, without authority, signs a promissory note in a representative capacity, but it exempts from responsibility one who so signs if duly authorized. It therefore leaves the situation in respect to a person signing a promissory note in a representative capacity without authority, under the circumstances of this case, exactly as it was before the act was adopted. This conclusion seems inevitable from the language of the statute itself. The question before us, considered irrespective of the statute, may be thus stated: Did Mathias incur a personal responsibility when he signed the note as a receiver without authority, if the payee and the holder both knew and intended that he should incur no personal responsibility thereby?

"In *Boyle v. Rider*, 136 Md. 286, 110 A. 524, *Gill v. Carmine*, 55 Md. 339, and *Knipp v. Bagby*, 126 Md. 461, 95 A. 60, this court recognized and adopted the principle that, although a trustee, even with general powers of management, is bound personally by the contracts he 'may make as trustee, though he designates himself as such,' nevertheless, where the parties to the transaction intended that the trustee should not be personally liable, that the general rule would not apply.

"It seems clear that the statute was intended to reach and correct hardships resulting from the application of

the general rule stated in these cases, and that it was not intended to prevent persons with full knowledge of all material facts, dealing with one acting in a representative capacity, from agreeing with him that he should not be personally bound by contracts executed by him in that capacity. *American Trust Company v. Canevin* (C. C. A.) 184 Fed. 657, 107 C. C. A. 543; *Gill v. Carmine*, 55 Md. 341; *Crawford, Neg. Inst.* 54. There is no doubt but that under such circumstances a representative executing a promissory note would not be personally bound if he was duly authorized to execute it, and there seems to be no apparent reason why the same rule should not apply where he was not authorized, if the parties so agree with knowledge of that fact, in cases where the rights of a holder in due course are not involved. If, in such a case as this, the creditor knew that the receiver in executing the promissory note in question did so only as receiver, and had no intention of binding himself personally, and accepted the note with that knowledge and that understanding, certainly he ought not to be permitted, when it appears that both he and the receiver were mistaken as to the receiver's authority to execute it, to hold the receiver liable, on a contract which he knew the receiver never intended to make, and which in fact he did not make. *Kansas National Bank v. Bay*, 62 Kan. 692, 64 P. 596, 54 *L. R. A.* 408."

It was further found that the note had been accepted with full knowledge of his lack of authority, and for this reason the judgment of the lower court denying recovery against him personally was affirmed. From this and the other cited authorities it seems clear that the intention of the parties is an important element in determining whether a party, signing an instrument in a representative capacity without authority, becomes personally liable. See also *A. L. I. Restatement, Agency*, sec. 329.

Returning again to the facts, it definitely appears that the renewal note, as presented to Mrs. Brown for signature, was not to bind her individually, but she was only asked to sign it as administratrix. Her testimony is defi-

nite that she had no idea of binding herself in an individual capacity by executing it, and the conduct of appellant, in securing a confessed judgment in which the order of court provided that the judgment was to bind only assets in her hands as administratrix, plus the fact that it later filed this judgment against the estate in the Orphans' Court of Allegany County, are facts which conclusively show that neither of the parties intended the obligation to be other than one of Abraham T. Brown's estate.

Moreover, the fact that she was without authority to execute it and thereby bind the estate must have been well known to appellant, who secured its execution promptly upon presentation, this circumstance of itself being sufficient to cause it to realize she had no time within which to secure such authority, even if it could have been obtained.

Upon these facts and the views which we have expressed as to the law, we think it cannot be held that the judgment in question binds Mrs. Brown individually, and for this reason it follows that the conduct of appellant in causing her individual property to be levied upon and advertised under the writ issued thereon was not legally authorized. Under such circumstances, it is a peculiar province of equity to grant relief. *Wilmer v. Epstein,* 116 Md. 140, 81 A. 379; *Dunn v. Wilmer,* 131 Md. 494, 102 A. 763; *Kartman v. Miliman,* 144 Md. 502, 503, 125 A. 170; *Miller's Equity Procedure,* sec. 571; *Pomeroy's Equity Jurisprudence,* sec. 1338.

*Order affirmed, with costs to appellee.*