SHOE AND LEATHER NATIONAL BANK *vs.* JOSEPH DIX &
others.

Suffolk.   March 16.— Sept. 14, 1877.   ENDICOTT & SOULE, JJ., absent.

An instrument in the form of a promissory note, beginning, "We as trustees but
not individually promise to pay," and signed "A., B. and C., trustees," purported
on its face to be secured by mortgage of real estate.   A., B. & C. were trustees of
a land association, and purchased of the promisee a parcel of land, the deed of
which ran to them as trustees of the association, and set forth their powers.   They
mortgaged the land to the grantor, and gave the above instrument, secured by
the mortgage, in part payment of the purchase money.   *Held*, in an action against
the makers of the instrument, by an indorsee, who took it after maturity, that
they were not personally liable thereon.

CONTRACT against the makers of the following instrument :

"February 16, 1871.   $53,000.   For value received, we as
trustees but not individually promise to pay to the Boston Water
Power Company or order, the sum of fifty-three thousand dol-
lars in five years from this date, with interest to be paid semi-
annually, at the rate of seven per centum per annum, during
said term, and for such further time as said principal sum or any
part thereof shall remain unpaid.

"Signed in presence of         Geo. P. Sanger, ⎫
        P. H. Sears.            Joseph Dix,      ⎬ Trustees.
                                R. A. Ballou,    ⎭

"Secured by mortgage of real estate in Boston, duly stamped,
to be recorded in Suffolk Registry of Deeds."

This instrument was indorsed in blank by the Boston Water
Power Company.

The action was discontinued as to Ballou, because of his dis-
charge in bankruptcy, and the assignee in bankruptcy of Dix
was admitted to defend; and the case was then submitted to
this court on an agreed statement of facts in substance as fol-
lows :

Prior to February 16, 1871, there existed a private association
of persons who agreed to act in concert together in purchasing
real estate in this and the adjacent counties.   This association
made the defendants, who, with other persons, were then mem-
bers thereof, its trustees to effect such purchases of real estate,
with powers and duties concerning the same, substantially as set

forth in the deed hereinafter mentioned.   On February 16, 1871, the association, through its said trustees, caused a purchase of property from the Boston Water Power Company to be effected, and the conveyance to be made to the defendants, " as they are trustees for the Brookline Avenue Associates as hereinafter set forth."   " To have and to hold the granted premises, with all the privileges, easements and appurtenances thereto belonging, to the said Sanger, Dix and Ballou, as joint tenants and not as tenants in common, and to their heirs and assigns and to the survivor of them and his heirs and assigns forever, in trust nevertheless for the Brookline Avenue Associates for the following purposes : to take, hold, mortgage, lease, manage and improve the same according to the exercise of their best discretion, with full power in the trustees or trustee for the time being, in the exercise of such discretion, to sell at public or private sale any portion or the whole of the real estate hereby conveyed, and to make, execute and deliver good and sufficient deeds to convey the same in fee simple free from the trusts hereby created."

At the same time with the execution and delivery of the deed, a mortgage back to the Boston Water Power Company, in part payment of the purchase money, was executed by the defendants, and the note secured thereby, being the note in question, given, which in March or April, 1876, was indorsed to the plaintiff. The mortgage was never assigned to the plaintiff, having been foreclosed by sale on November 4, 1875.

If upon these facts the defendants were liable, they were to be defaulted, judgment to be ordered against the defendant Dix for a sum stated, to be proved against his estate in bankruptcy, but no execution to issue against him personally, and against the defendant Sanger ; otherwise, judgment was to be ordered for the defendants.

*H. D. Hyde*, for the plaintiffs.

*S. Bartlett & A. C. Clark*, for the assignee of Dix.

*P Cummings*, for Sanger.

AMES, J.   The question whether the defendants have made themselves personally responsible must be determined by the terms of the note itself.   In determining the proper interpretation of any written contract, the court will give full effect to all the terms in which it is expressed.   Those terms will not be

modified by extrinsic evidence tending to show that the real intention of the parties was something different fium what the language imports. They will be taken in their plain, ordinary and popular sense, except where it may be qualified by some special usage, or where the context evidently shows that the parties in some particular case had a different intent. It is no part of the business of the court to make or alter a contract for the parties. Even if it be found that the contract, according to its true meaning, has no legal validity, or fails to become operative, it is not for the court, in order to give it operation, to suppose a meaning which the parties have not expressed, and which it is certain they did not entertain. It must be assumed that all the language used in the contract was selected with some purpose and is to be of some effect. If a party, therefore, in a contract into which he voluntarily enters, and not in the execution of any official trust or duty, makes it an express stipulation that he is acting for somebody else, and is in no event to be personally liable, he certainly cannot be rendered so by law. Sedgwick, J., in *Sumner* v. *Williams*, 8 Mass. 162, 184. In a question as to the meaning of a contract, the want of apt words to create a personal responsibility is not to be supplied by the alteration or enlargement of its terms.

In applying these familiar and elementary rules of construction to the case now before us, we find that the defendants promised " as trustees but not individually." The construction contended for by the plaintiffs would require us to strike out the words " but not individually ; " although in so doing we should not only alter the contract, but should impose upon them a liability which apparently they took special pains to avoid.

It is to be borne in mind that this was not a case of agents acting for an undisclosed or unknown principal, and is, therefore, readily distinguishable from *Winsor* v. *Griggs*, 5 Cush. 210, and cases of that class. Neither was it an attempt by the defendants to bind property over which they had no legal control. By the terms of the deed they had 'power to mortgage, lease and manage the property at their discretion, but for the benefit and on the account of the equitable owners, namely, the members of the Brookline Avenue Association. In this respect the case dif fers from *Thacher* v. *Dinsmore*, 5 Mass. 299, *Forster* v *Fuller*

6 Mass. 58, and other cases of that class, in which a party promising "as guardian," &c., was held to have made himself personally liable.

Neither can it be said that the term "trustees" was used as "a mere description of the general relation or office which the person signing the paper holds to another person or to a corporation, without indicating that the particular signature is made in the execution of the office and agency." In this respect the case differs from *Tucker Manuf. Co.* v. *Fairbanks*, 98 Mass. 101. It often has happened that an agent for another person, or the treasurer of a corporation, has made himself personally responsible, by the form of words in which he has expressed himself in a written contract, when he may have intended to bind his principal only. Cases in which this question has been raised have often been before this and other courts, and the authorities have recently been collected and reviewed in several of our own decisions. See *Slawson* v. *Loring*, 5 Allen, 340; *Barlow* v. *Lee Congregational Society*, 8 Allen, 460; *Tucker Manuf. Co.* v. *Fairbanks, ubi supra.* But we believe no case can be found in which a promise "as trustee," &c., accompanied with an express disclaimer of personal liability, would fail to exempt him.

It is contended that if these defendants are not liable upon the contract as a note, then nobody is liable. Even if such were the fact, it would not be in the power of the court, as we have already seen, to alter the contract for the purpose of giving it validity. In deciding whether the defendants have or have not bound themselves, we need not decide whether they have or have not bound their principals. *Abbey* v. *Chase*, 6 Cush. 54. But, even if the written contract should fail of taking effect as a negotiable note, it might still be operative as an acknowledgment of unpaid debt, which the mortgage was intended to secure. It may be that this was all that the original parties intended, or supposed to be material. They may have considered the mortgage sufficient security, without the personal responsibility of the trustees.

Our conclusion therefore is that, without proof that the defendants, as trustees, have funds of the association in their hands applicable to this debt, no action can be maintained against them. No evidence to that effect having been offered, we must order                                 *Judgment for the defendants.*