(107 App. Div. 491.)

## KERBY v. RUEGAMER et al.

(Supreme Court, Appellate Division, Second Department.   September 29, 1905.)

1. BILLS AND NOTES—PARTIS—TRUSTEES.

An owner contracted for the erection of certain buildings.  During the work the premises were conveyed to trustees for creditors, for the purpose of completing the buildings.  A subcontractor, with knowledge of the facts, agreed with the trustees to do certain work on the buildings, and received a note therefor, signed by the trustees in their individual names, followed by the words "as trustees, etc."  There was evidence that, when the note was given, the subcontractor was informed that the trustees would not incur personal liability.  *Held*, that the trustees were not bound individually, though the note did not on its face disclose that its consideration was for the benefit of the creditors of the owner, and that it was given by the trustees as trustees for the creditors.

[Ed. Note.—For cases in point, see vol. 7, Cent. Dig. Bills and Notes, §§ 260, 265.]

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by William Kerby against Andrew Ruegamer, Jr., and others. From a judgment for defendants, plaintiff appeals.   Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

Henry W. Eaton, for appellant.
Leon Raunheim, for respondents.

RICH, J.   This action is brought upon the following instrument:

"Dolls.   166 51/100                                Brooklyn, Aug. 13th, 1903.
  "Three months after date we promise to pay to the order of Wm. Kerby one hundred & sixty-six 51/100 dollars at the Union Bank, value received & interest.                                          Andrew Ruegamer, Jr.,
                                              "Daniel W. Moore,
                                              "Leon Raunheim,
                                                   "As Trustees, etc."

The plaintiff demands judgment against the defendants individually. This appeal is from a judgment in favor of the defendants upon the merits, rendered by the trial justice.   The note sued upon is a renewal of a three-months note for $164 and interest, given to the plaintiff by the defendants on May 19, 1903, signed in the same manner. This note at maturity bore $2.51 interest, which with the principal constitutes the consideration for the note in suit.

The original note was given under the following circumstances: Some time prior to November 11, 1902, one John C. Kobbe was the owner in fee of six lots situate on the westerly side of Albany avenue, in the borough of Brooklyn.   He entered into a contract with one Emil Manneck for the erection thereon of certain buildings.   Manneck, on April 11, 1902, sublet to the plaintiff the furnishing and placing in said buildings of certain heaters, pipes, registers, ranges, and boilers, for the consideration of $900.   Kobbe borrowed of one Mulholland $7,609.25 for use in such enterprise, and transferred to the latter three of said lots as security for such loan.   He also arranged with the Law-

yers' Title Insurance Company of New York for a building loan of $27,000, of which amount $13,500 had been advanced. Kobbe was also indebted to the J. H. Mahnken Company, Ruegamer & Auer, Ida Manneck, and Harriet C. Johnson for labor and materials which they had severally furnished for the construction of said buildings. On November 11, 1902, Kobbe and Manneck reached the conclusion that they were unable to proceed further with the improvements. This fact they communicated to the said creditors, and an instrument was prepared and executed on that day, by all of the parties except the Lawyers' Title Insurance Company, in which, after reciting the facts, the defendants herein were named and constituted trustees, to whom and as such Kobbe and Mulholland conveyed the said six lots, with the buildings thereon in their unfinished condition. Said instrument contained, among others, the following provisions:

"Third. The said trustees shall take title to the above-described property, and hold the same in trust to carry out the terms of this agreement, and assume all liabilities and obligations attaching thereto, and especially under the building loan agreement entered into by the said John C. Kobbe with the said Lawyers' Title Insurance Company, and the said trustees shall have full power to carry on and complete the building operations, to accept and receipt for payments made on account of said building loan, and to disburse the same as to them may seem good, to pay or settle any claim or claims against the above-described property of parties not included in this agreement, to pay for all future labor and materials according to the terms of contracts heretofore made with respect thereto, and for any expenses necessarily incurred by the said trustees in the execution of and for carrying out of the terms of this agreement.

"Fourth. The said trustees are authorized and empowered to rent, sell, or mortgage the whole or any part of the above-described premises, to make, execute, acknowledge, and deliver good and sufficient deeds and conveyances for the same, and to sign, seal, and deliver a bond or bonds for the payment of any sums, and to sign, seal, and deliver as collateral thereto a mortgage or mortgages upon said property, with the usual provisions and covenants."

"Seventh. The trustees shall have power to levy assessments from time to time as it may be necessary upon the parties of the second part whose names are set forth in paragraph sixth hereof. Said assessment is to be apportioned amongst the said parties pro rata according to the amount of their respective claims. Any amount so assessed, when paid by the said party, shall be added to the amount of their claim, constituting a new sum as a basis for the pro rata distribution provided for in the sixth paragraph hereof."

Further provisions are found for applying the avails of a sale, mortgage, or any income from the property to and among said creditors, and payment of the surplus, after deducting expenses, to said Kobbe.

The defendants on the same day executed an instrument, annexed to said trust agreement, accepting said trust and containing the following provision:

"Now, know ye that we, the said Andrew Ruegamer, Jr., Leon Raunheim, and Daniel W. Moore, do by these presents make known, admit, and declare that said premises were so conveyed to us, and that we now hold and will continue to hold the same, in trust only for the use and benefit set forth in the said agreement hereto annexed, and that we have no beneficial interest therein, except what may arise by legal or equitable implication from the circumstances of our having executed said agreement. And we do, for ourselves, our suc-

cessors, and assigns, covenant and agree to and with John C. Kobbe, the John H. Mahnken Company, Ruegamer & Auer, Ida Manneck, H. C. Johnson, and John Mulholland to assume all the obligations and liabilities and to perform the duties as set forth in said agreement."

Immediately following the execution of these papers, said Manneck informed the plaintiff that the defendants were trustees to finish the buildings, and advised him to go and see them about his contract and its continuance, so that he might get his heaters and furnaces in the buildings, in compliance with which suggestion, on or about December 10, 1902, the plaintiff had an interview with the defendant Raunheim at which Manneck was present. The latter testified that Raunheim in that interview informed the plaintiff of the execution of the trust agreement, that it was on record, that the trustees had taken the property for the benefit of the creditors for whom they were trustees, and as such trustees were going to finish the buildings. Raunheim testified that the plaintiff wanted to continue with the contract that he had with Manneck, and that he gave plaintiff a copy of the trust agreement, and told him of the appointment of defendants as trustees, to which plaintiff replied that he already knew it, that Manneck had explained it to him, and sent him there to see him. A difference arose as to the amount plaintiff had contracted with Manneck to put the ranges and other appliances in the buildings for. Raunheim offered to give plaintiff the contract for $715, and plaintiff wanted $900, and it was finally agreed that the plaintiff should give the trustees a written estimate. (The trial justice found that plaintiff had notice, knowledge, and a copy of the trust agreement prior to entering into his contract with defendants.) Later, on the same day, the plaintiff sent Raunheim the following letter:

"New York City, Dec. 10th, 1902.
"Leon Raunheim, Esq., 44 Court Street, Brooklyn—Dear Sir: Confirming our verbal agreement of to-day in reference to completing my contract as made with E. Manneck for setting 6 furnaces & pipes & registers, 6 brick set ranges & 6 horizontal boiler ranges for $900.00, I will order on furnaces from foundry at once & prepare to set them so you may have heat desired while the work is progressing, and will take my payments as arranged, viz., part note & cash, as payments are reached. Kindly acknowledge by return mail and oblige.
"Yours very truly,                                        Wm. Kerby.
"6 houses, Albany Ave. & Degraw St., Brooklyn."

On December 12th Raunheim replied as follows:

"New York City, December 12, 1902.
"William Kirby, Esq., No. 106–108 Beekman Street, Manhattan—Dear Sir: Your letter of December 10th received, and I beg to say that the trustees have requested me to inform you that you may do the work as per specifications for $900.00, on condition that you will accept part payment when the white mortar payment is made to the trustees, and the balance when the houses are completed.
"Yours very truly,                        Leon Raunheim, Atty. for Trustees."

The plaintiff thereupon furnished and put in said buildings the ranges, furnaces, and other appliances referred to and recited in his letter. On February 28, 1903, he received from defendants the following check:

"No. 48.                                        New York, Feb. 28th, 1903.
"Union Bank of Brooklyn
"Pay to the order of William Kerby $350.no/100, Three hundred and fifty no/100 Dollars.

"Leon Raunheim,
"Andrew Reugamer, Jr.,
"Daniel W. Moore,
"As Trustees, &c."

—and signed and delivered to defendants the following receipt therefor:

"Received from Leon Raunheim, Daniel W. Moore, Andrew Ruegamer, Jr. as trustees, &c., check for the sum of three hundred and fifty dollars on account of heater and range contract for the six houses on Albany avenue.
"Dated Brooklyn, New York, February 28, 1903.

"Wm. Kerby."

On May 19th the note of which the note in suit is a renewal was given, and is the first note that is shown by the record to have been given plaintiff by defendants. What occurred at the time it was given was testified to by Mr. Raunheim as follows:

"When Mr. Kerby received the first note, it was handed to him in my office at his suggestion. He said that he wanted our notes individually, I believe, or indorsed by us individually. I told him we could not give him that, because we were only trustees, so he said he could have the note discounted in banks up the state. I therefore gave him this note."

This conversation was denied by plaintiff, but in rendering the judgment the trial justice must have found that it occurred as testified to by Raunheim.

There were several other checks, notes, and communications between plaintiff and defendants; the checks and notes being signed the same as the note in suit, and in at least one communication plaintiff addressed Raunheim as a "trustee, &c."

The evidence before the court below disclosed that for some time prior to the making of his contract with them the plaintiff knew that the defendants were trustees and were acting as such in completing the unfinished buildings. On December 10th, two days before his proposal was accepted by defendants, Raunheim had explained the trust agreement to him fully and furnished him with a copy, which put him in possession of the knowledge of who the persons were, whom they represented and for whom they were acting as trustees. He made his contract with defendants as trustees, and furnished thereunder and placed on the property the ranges, furnaces, and appliances, that they as trustees might complete the buildings. He had received checks prior to the giving of the note in suit, signed by defendants in their representative capacity, in part payment of his debt, and had signed receipts acknowledging that the payments they were making him were made by them as such trustees. All his dealings with them are shown to have been with the knowledge that they were trustees, and acting as such in finishing the houses, that they might be sold to provide funds with which to pay the creditors of Kobbe. He had a copy of the trust agreement showing all these facts in his possession before he wrote the letter of December 10th, which, with defendants' reply, forms the contract, and it is hardly to be believed that he did

not acquaint himself with its contents before he proceeded to contract and deal with the defendants. The fixtures furnished by him, for which the note in suit was given as part payment, were procured by defendants to complete the buildings pursuant to the duties assumed by them in accepting the trust, to plaintiff's knowledge. A fair construction of the trust agreement leads to the conclusion that power was vested in the trustees, in completing the buildings, to execute notes in the ordinary course of business, evidencing a debt contracted by them, and that seems to have been the construction given its provisions by the persons executing it, who are shown to have ratified the action of the trustees in executing such instruments, as well as in all other details; the defendant Daniel W. Moore testifying, without objection, that he had authority to sign this note in suit, and that all the notes given by the trustees were ratified by the members under the trust agreement. The note did not upon its face disclose the fact that its consideration was for the benefit of the creditors of Kobbe and was given by defendants as the trustees for such creditors, and it was not necessary that it should. Megowan v. Peterson, 173 N. Y. 1, 65 N. E. 738. These facts were known to plaintiff, and as to him it was not necessary that he should be furnished with information of what he already knew to relieve the defendants from liability.

The purpose of the statute is limited to putting the payee of such a note in possession of the knowledge that in its execution and delivery no personal liability was intended to be assumed by the makers, and where, as in this case, the payee knows that the makers are trustees, and the object and purposes of their trust, as well as their powers thereunder, has contracted with them in their representative capacity, and furnished certain property to be used in furtherance of their trust duties, and requests a note as an evidence of the indebtedness so created, it is not necessary, as to him, and the makers are not required, to relieve themselves from personal liability on such note, to repeat to him in writing upon the face of the instrument, or orally, information that he already possesses. If it could be held that such a requirement was necessary, the evidence of Raunheim establishes that when the note was given the plaintiff was informed substantially that the defendants would not incur personal liability, and would not give their individual notes or indorsements, because they were acting as trustees only, which brings the case within the decision of First National Bank v. Wallis, 150 N. Y. 455, 44 N. E. 1038. These facts furnish a complete defense to plaintiff's claim of individual liability, and abundantly satisfy the requirements of the negotiable instruments law.

The judgment appealed from must be affirmed, with costs. All concur.