BILLS AND NOTES ⬦273—MAKERS—INDORSERS—LIABILITY.

> Under Negotiable Instrument Law (Consol. Laws, c. 38) § 39, provid-
> ing that where the instrument contains, or a person adds to his signa-
> ture, words indicating that he signs in behalf of a principal or in a rep-
> resentative capacity, he is not liable, if duly authorized, and section 74,
> providing that, where any person is under obligation to indorse in a rep-
> resentative capacity, he may indorse in such terms as to negative per-
> sonal liability, an indorsement on a note, signed by a church and its
> president and treasurer, which contains the name of the church, the names
> of the president and treasurer, and the words "Finance Committee," fol-
> lowed by the names of the persons constituting the committee, does not
> make the individuals personally liable.

> [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 651; Dec.
> Dig. ⬦273.]

Action by the Chelsea Exchange Bank against the First United Presbyterian Church and others, against the defendant church as maker, and the individual defendants as indorsers, of a note. Judgment against defendant church alone.

Shaw, Fisk & Shaw, of New York City, for plaintiff.
Andrew F. Murray, of New York City, for defendants.

RANSOM, J.    The plaintiff bank is entitled to judgment against the defendant church for the amount of its note, with interest, but is not entitled to judgment against the individual defendants as indorsers thereon.    The face of the note in suit is as follows:

"$1,750 00/100.                                                    August 19, 1914.

"Thirty days after date we promise to pay to the order of ourselves seventeen hundred and fifty 00/100 dollars at Chelsea Exchange Bank, 34th St., near 8th Ave.    Value received.

"First United Presbyterian Church,
"16 West 108th St.
"Pres. John Elliott.
"Treas. Edward A. Shea.

"No. 41846.    Due 9/18."

On the back of the note appears the following indorsement:

"First United Presbyterian Church, John Elliott, Pres. Edward A. Shea,
Treas. Finance Committee, John Elliott, Edward A. Shea, John McKee."

The plaintiff bank does not assert that Elliott or Shea have any liability, individually or jointly with the corporation, as makers of the note, which is conceded to be the authorized obligation of the church corporation, executed and delivered for its purposes, and payable to its order. The plaintiff's claim is rather that Shea, Elliott, and McKee are personally liable as indorsers of the corporate note, because of the conceded presence of their signatures in the indorsement above quoted. I am not of the opinion that the context of these signatures of attestation is such as possibly to impose upon any one of the three officers so signing any collateral contract of individual liability. Babcock v. Beman, 11 N. Y. 200. Under the undoubted weight

of authority, in this and other jurisdictions, the note in suit is complete and unambiguous in form—"being drawn by, payable to, and indorsed by, the corporation"—and nowhere does it import more than a corporate obligation. The writing of the *name* of the church corporation on the back of the note is not an indorsement thereof. The corporate indorsement is by those who sign in an official capacity in behalf of the church. E. Moch Co. v. Security Bank, 151 N. Y. Supp. 756. The words "Finance Committee, John Elliott, Edward A. Shea, John McKee," appear as an integral part of the corporate indorsement, and parol proof to show an intent thereby to create a personal liability would necessarily be rejected or disregarded, as contrary to the convincing evidence of intent to be found within the four corners of the note itself. Falk v. Moebs, 127 U. S. 597, 8 Sup. Ct. 1319, 32 L. Ed. 266; Olcott v. Tioga R. R. Co., 40 Barb. 179, affirmed 27 N. Y. 546, 84 Am. Dec. 298; Carpenter v. Farnsworth, 106 Mass. 561, 8 Am. Rep. 360; Liebscher v. Kraus, 74 Wis. 387, 43 N. W. 166, 5 L. R. A. 496, 17 Am. St. Rep. 171; Farmers' & Mechanics' Bank v. Colby, 64 Cal. 352, 28 Pac. 118; Draper v. Massachusetts Steam Heating Co., 5 Allen (Mass.) 338; Babcock v. Beman, 11 N. Y. 200; Haight v. Sahler, 30 Barb. 218; Randall v. Van Vechten, 19 Johns. 60, 10 Am. Dec. 193; Atkins v. Brown, 59 Me. 90; Castle v. Belfast Foundry Co., 72 Me. 167; Chapman v. Smethurst (1909) 1 K. B. 927; Alexander v. Sizer (1869) L. R. 4 Ex. 102; Barlow v. Congregational Society, 8 Allen (Mass.) 460; Latham v. Houston Flour Mills, 68 Tex. 127, 3 S. W. 462; Hitchcock v. Buchanan, 105 U. S. 416, 26 L. Ed. 1078.

If Elliott and Shea are not liable, with the corporation, as joint makers of the note, by reason of their signatures on the face thereof, in behalf of the church corporation, on what theory are they, with McKee, liable as indorsers, because of their signatures on the back of the notes, as a part of the corporate indorsement requisite for its transfer? Proof that indorsement by the finance committee was not *necessary* to make a valid transfer of the note (Babcock v. Beman, 11 N. Y. 200), or to insure the liability of the church corporation upon it, would not render the committee members personally liable, even were such proof available in this case.

Construction of the indorsement of a note is governed by a different rule than the maker's signature, and the difference is all in the direction of deeming an indorsement to have been made in a representative capacity and for purposes of transfer rather than for the assumption of a personal liability. Huffcutt on Agency, § 194; Negotiable Instrument Law, § 72; First Nat. Bank v. Hall, 44 N. Y. 395, 4 Am. Rep. 698; Collins v. Buckeye Co., 17 Ohio St. 215, 93 Am. Dec. 612; Souhegan Bk. v. Boardman, 46 Minn. 293, 48 N. W. 1116; Babcock v. Beman, 1 E. D. Smith, 404; Id., 11 N. Y. 200; E. Moch Co. v. Security Bank, supra.

The plaintiff relies upon a great number of decisions not readily reconcilable, but plainly distinguishable on the facts from the case at bar; for example:

(1) Cases in which the individual signature is *followed* by words designating a representative capacity or a corporate office, with or

without disclosure of the identity of the principal or the name of the corporation;

(2) Cases in which the name of the corporation appears in the body of the note, but not in connection with the signature or indorsement; and

(3) Cases in which the name of the corporation, in the signature or indorsement, is followed by the name of an individual who in fact occupies an official relation and acts in a representative capacity, which, however, is not disclosed by the note, or is but imperfectly disclosed.

Under circumstances such as those just summarized, notes have variously been held to create an individual, corporate, or joint liability, or to call for parol proof of actual intent. None of these rulings, even if fully accepted in this state, could avail to create individual liability from an indorsement so obviousy and conclusively corporate as that at bar.

If there were doubt of this under common-law principles, the Negotiable Instrument Law has resolved the doubt in favor of these defendants. Section 74 provides that:

"Where any person is under obligation to indorse in a representative capacity, he may indorse in such terms as to negative personal liability."

That is just what these defendants did. Section 39 provides that:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

The manner of executing this indorsement seems fairly to come within the protection of the statute, and to negative personal liability.

Inasmuch as the case was tried without a jury, I felt free to receive, over objection, the rather fragmentary parol evidence offered by the bank and the defendants as to their course of dealing. This proof indicated that the church maintained its bank account with the plaintiff bank and had at various times borrowed money from the bank upon its notes; that such notes, as well as checks on the account, had been differently signed and indorsed by the defendants in behalf of the corporation, according to changes in the regulations and directions of the church, brought to the notice of the bank; that the financial affairs of the church had latterly been intrusted to and conducted by its finance committee, of which the bank had notice; that the finance committee was composed of the president and treasurer and one other lay member; and that the printed form of checks, used by the church in 1914 and recognized by the bank as fixing the requirements for valid checks against the church's account, showed the following manner of signature:

"First United Presbyterian Church of New York,
"Finance Committee.
"[Signed]   John Elliott, Pres.
"[Signed]   Edward A. Shea, Treas.
"[Countersigned] John McKee."

The parol proof also indicated the plenary authority of the finance committee to secure this loan for the church upon the latter's note. Accordingly, if it be deemed proper to receive and consider parol evidence on the question whether the collateral circumstances and actual intent of the parties show a contractual purpose and impose a liability undisclosed by the tenor of the note, the record at bar contains no indication that the result would be other than that already stated.

Judgment may be entered against the church corporation and in favor of the three individual defendants. Submit findings on three days' notice.