WALDEMAR M. WOLFF, Appellant, *v.* HENRY M. FLATEAU, Respondent.

First Department, July 6, 1923.

Executors and administrators — action to recover legacy from executor personally — plaintiff accepted in payment renewal notes held by executor — notes represented investment made by testatrix which executor was authorized to continue — executor's name was indorsed on notes followed by word " executor "— indorsement did not make executor personally liable — plaintiff alleged collateral promise to pay if maker of notes did not — collateral promise not supported by consideration.

In an action to recover a legacy from the executor personally, it appeared that a trust fund was established for the benefit of the plaintiff; that the executor was authorized to continue investments which the testatrix had made; that the plaintiff accepted from the executor renewal notes originally made payable to the testatrix, in full payment of the legacy and executed a release to the executor individually and as executor; that the renewal notes made payable to the defendant, executor, were indorsed by him in the same form with the word " executor " following his name; that the plaintiff alleged that the executor made a collateral promise to pay the notes in case the maker did not do so.

*Held,* that under the circumstances the indorsement in the form in which it was made was not intended or accepted as an assumption of personal liability on the part of the executor;

That the collateral promise by the executor is not supported by any consideration, since there was no proof that the executor was negligent in taking renewal notes, and furthermore the release given by plaintiff is not available to support the collateral promise, since it is not pleaded as a consideration therefor.

APPEAL by the plaintiff, Waldemar M. Wolff, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 26th day of April, 1920, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case.

*Morris & Samuel Meyers* [*H. H. Breland* of counsel; *Samuel Meyers* and *B. Leo Schwartz* with him on the brief], for the appellant.

*Charles Eno* [*Frank Walling* of counsel], for the respondent.

SMITH, J.:

The defendant was the executor of one Emilie Mendel. By her will she bequeathed unto her executor the sum of $5,000 to hold the same in trust, to invest and keep the same invested, and to apply the income derived therefrom towards the support and maintenance of this plaintiff. The plaintiff is described as one who had lived with the testatrix during his childhood. The moneys were to be so held until such time as the plaintiff should arrive at the age of twenty-five years, when the executor was to pay the principal of said trust fund to the plaintiff. By subdivision XIX of the will it is provided: "I hereby nominate, constitute and appoint Henry M. Flateau, executor of this my last will and testament and hereby revoke any and all other wills made by me; and I authorize my executor to continue the investment now held by me, so far as the trust fund created by paragraph 'II' hereof is concerned, and give him power to reinvest the said moneys, shall he deem it advisable, in any similar investment or upon bond and mortgage, covering real property situated in the City of New York or in United States, State or Municipal bonds." The trust created by "paragraph II" is the trust in behalf of the plaintiff hereinbefore recited.

At the time of her death the testatrix had loaned to one William Simpson the sum of $6,000, for which she held his note. The testatrix died in August, 1911, and the plaintiff became twenty-five years of age in December, 1917, at which time he was entitled to the moneys thus held in trust for him. Upon January 8, 1918, the defendant delivered to plaintiff two promissory notes of $2,000 and $1,100, made by the estate of William Simpson. These notes were renewals of prior notes maturing upon March 10, 1917, and March 16, 1917. William Simpson, during the lifetime of the testatrix and at the time of her death, was engaged in the pawnbroking business and was extensively engaged therein, having succeeded his father, who was also engaged in the same business. The defendant, as executor, collected payments upon those notes, until in January, 1918, when the plaintiff became of age, there was

then outstanding against William Simpson two notes, one of $2,000, and another of $1,100. These notes were payable to " Henry M. Flateau, executor," and when transferred to the plaintiff were transferred by the indorsement in similar form, to wit, " Henry M. Flateau, executor." Up to that time, from 1911, the date of the death of the testatrix, Flateau had paid to the plaintiff various sums as income from the trust fund, which the plaintiff had received as such. There was some difference between the amount of the two notes and the amount of the legacy which was paid to the plaintiff by Flateau at the time of the delivery of these two notes by check and by offsetting certain advancements. At the time of the receipt of these two notes the plaintiff executed to the defendant a release in full of all claims against the said Flateau, individually and as executor of the last will and testament of Emilie Mendel, deceased. The plaintiff, also, at the same time signed a receipt for what he received as being in payment of the legacy of $5,000 bequeathed to him under the will of the testatrix. It thus appears that the plaintiff had full knowledge of the fact that these notes were paid in pursuance of the trust, to the principal of which he had become entitled in December, 1917.

It is the contention of the plaintiff that the word " executor," attached to the indorsement, was simply *descriptio personæ*, and that the indorsement was the individual indorsement of the defendant. The notes transferred were not due at the time of the transfer. When they became due, not having been paid, the defendant was given notice of non-payment. The notice of non-payment does not appear in the record, so that it does not appear whether he was notified of its non-payment, as executor, or whether he was notified individually.

The rule of law determining the rights of the parties finds a clear statement in the case of *Bush* v. *Gilmore* (45 App. Div. 89) and is as follows: "A note, commencing ' For value received we promise to pay,' signed ' W. Gilmore, President; D. C. Sharpe, Secretary of the Hobart Agricultural Horse and Cattle Show Association,' and containing no reference in the body thereof to the corporation, is, upon its face, the individual note of the two makers; and they, in an action to enforce their individual liability thereon, are entitled to adduce extrinsic evidence tending to establish that the addition to their signatures was intended as an act of the corporation, and that the note was given and received as such. The plaintiff is entitled to controvert such evidence by affirmative proof of the individual character of the note." The authorities in support of this proposition are found in the opinion of Mr. Justice LANDON, who wrote in the Appellate Division.

The fact that this note was not signed by the defendant as executor, but was indorsed by him in the same form in which it was given to him, if not conclusive, is some evidence of the fact that there was no intention of assuming personal liability by reason of that indorsement, but that it was the intention of the defendant simply to transfer an asset of the estate which he held as trustee, without the assumption of personal liability thereupon.   The further fact that this was held by him as part of the trust estate, and that no part of the consideration went to the defendant as executor, as was known by the plaintiff, is convincing evidence in this case of the fact that the indorsement was not intended or accepted as an assumption of personal liability on the part of the executor, unless these facts be explained by the allegations and the proofs on the part of the plaintiff that, at the time of the transfer, the defendant stated to the plaintiff that, if the note was not paid by the makers thereof, he himself would pay the plaintiff the amount of the note.   In the plaintiff's complaint it is alleged: " That the defendant realizing that he was guilty of negligence in permitting said notes to be so renewed at all [the notes of William Simpson] and in accepting the renewal of the same from an insolvent maker, promised the plaintiff, upon giving the plaintiff the aforesaid notes, that the said notes were good and would be paid at maturity and that he, the defendant, would cash the same or pay cash therefor to the plaintiff at any time, whereupon and in consideration of which plaintiff accepted said notes from defendant in part payment of said legacy." This complaint would seem to indicate not that the plaintiff was relying upon the indorsement as the individual indorsement of the defendant, but was relying upon a collateral promise to pay the notes if not paid by the makers of the notes; and it is upon this collateral promise that plaintiff must recover, if at all, in this action.

While the negligence of the defendant is alleged, there was no proof whatever made upon the trial that the defendant was guilty of negligence in renewing the notes from time to time, as he did, after having reduced the obligation from $6,000 to $3,000 during the existence of the trust.   The plaintiff has offered no proof as to the amount of the estate or the nature of the investments, except as far as is indicated by these notes and one other note of a brother of William Simpson which the defendant had cashed.   There is no proof whether or not there were other trusts created by the will. There was no fraud or misrepresentation on behalf of the defendant by which the plaintiff was misled.   He has accepted these notes in full payment of his legacy upon his own showing, with the collateral promise that the defendant would pay the notes, if the makers did not honor them when due.   This collateral promise would

clearly be void under the Statute of Frauds, and this statute would be a complete defense to this as a collateral promise, except for the fact that the defendant has failed to plead that statute, and the only defense, therefore, which the defendant may assert to such collateral promise is want of consideration therefor. As before stated, a consideration might be found in the negligence of the defendant in taking these renewals and resultant liability if facts were proven to support such contention. The plaintiff, therefore, is driven to his final position that the giving of this release is a sufficient consideration to support this collateral promise. To this position the defendant, in my judgment, has a clear answer. The release is not pleaded as a consideration for the collateral promise, nor is any consideration pleaded, other than personal liability existing by reason of the negligence of the defendant in continuing this investment, and no proof was given on the trial from which any such negligence has been shown. Whatever sympathy the court may have for the failure of this plaintiff to obtain the amount of his legacy, a trustee should not lightly be held to personal responsibility for continuing an investment which he was specifically authorized to continue under the terms of the will creating a trust, and without proof of any negligence on his part.

For failure to make proof, therefore, of the cause of action alleged in the complaint, the Trial Term was justified in dismissing the complaint, and the judgment should be affirmed, with costs.

CLARKE, P. J., DOWLING, MERRELL and MCAVOY, JJ., concur.

Judgment affirmed, with costs.