[Civ. No. 7047. First Appellate District, Division Two.—May 29, 1930.]

THE CHARLES NELSON COMPANY (a Corporation), Appellant, v. FREW MORTON et al., Respondents.

Fitzgerald, Abbott & Beardsley for Appellant.

Frank J. Solinsky and Sidney Rhein for Respondents.

DOOLING, J., *pro tem.*—This is an appeal by the plaintiff from a judgment in favor of defendants without preju-

dice to an action against defendants as trustees to procure satisfaction out of trust property.

The decision of the case depends chiefly upon the proper construction to be given to section 3101 of the Civil Code (sec. 20 of the Uniform Negotiable Instruments Law), which reads as follows: "Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

In deciding the case the learned trial judge wrote an opinion, the following portions of which we adopt as a part of the opinion of the court:

"This case involves the question whether the plaintiff can hold the defendants personally liable under a promissory note signed, on behalf of the trustees of a business trust, by the defendants, themselves trustees, or must look only to the trust property.

"Plaintiff, The Charles Nelson Company, became the holder of the note before maturity by transfer from the payee, Sunset Lumber Company, which is an allied corporation retailing lumber bought in part from The Charles Nelson Company, a wholesaler. The note is in the following form:

" '$13891.60                              San Francisco, Calif.
                                          " 'May 19 1922

" 'On or before May 15th 1923 after date, for value received We promise to pay to Sunset Lumber Co. Oakland Calif or order the sum of Thirteen Thousand eight hundred ninety one and 60/100 Dollars, at the office of The Charles Nelson Co. 230 California St. San Francisco, Calif. in United States Gold Coin, with interest at the rate of seven per cent. per annum, interest payable at maturity. And in case said interest is not paid within one month after the same becomes due, it shall be added to the principal and bear a like rate of interest until paid, and the whole of said principal and interest shall forthwith become due, at the option of the holder hereof, without notice. And in case suit is brought to collect this note or any portion thereof, we promise and

agree to pay such additional sum as the Court may adjudge reasonable, for attorneys' fees in said action.

> " 'TRUSTEES OF GREATER SAN FRANCISCO
> " 'SPEEDWAY ASSOCIATION
> " ' (a Trust)
> " 'FREW MORTON Pres.
> " 'C. C. LOSER Sec.'

"The defendants contend that under section 3101 of the Civil Code (which is in the language of section 20 of the Uniform Negotiable Instruments Act), the defendants are exempted from personal liability.

"The evidence shows that the defendant Morton was president and the defendant Loser secretary of the board of three trustees of a business trust having as its trade name Greater San Francisco Speedway Association. While under the original articles of agreement the association would have to be classed as a partnership rather than a trust, yet the amended articles, which were entered into before the execution of the note, created a legal trust. (*Williams* v. *Milton,* 215 Mass. 1, 7–9 [102 N. E. 355].)

"By the trust agreement the trustees were directed to build and equip a racing speedway for automobiles. And, among other things, they were authorized to borrow money for the purpose, to issue notes or other forms of indebtedness therefor, and in general to make all such contracts as the trustees might deem expedient in the conduct of the business of the trust.

"The note in suit represents a balance of the purchase price of lumber bought for the association from the Sunset Lumber Company by the trustees, and used in the construction of the speedway.

"The trust agreement provides, as is pleaded in the complaint, that all persons contracting with the trustees shall look only to the trust property for payment, and that in every written contract the trustees shall incorporate a stipulation against personal liability on the part of the trustees, the certificate holders or the trustors. It will be observed that the note in this case is without such stipulation.

"The case must hang upon the effect to be given to section 3101, Civil Code.

"In order to secure personal exemption under that section for a signer not acting in his own private interest, he

must not only be duly authorized to act, but the note must show that 'he signed for or on behalf of a principal, or in a representative capacity'; and there must be sufficient to disclose the principal.

"Counsel for plaintiff argue that this section had nothing to do with the case, because trustees are themselves principals always. Plaintiff's counsel would limit the application of the section, therefore, to cases of strict agency for a known principal.

"Trustees are of course masters of the trust property, managing it for their beneficiaries; and contracts made in their official capacity are their contracts and, as is said in *Taylor* v. *Davis*, 110 U. S. 330, 335 [38 L. Ed. 163, 4 Sup. Ct. Rep. 147], cited by plaintiff, impose personal liability upon themselves, in the absence of special grounds of exemption.

"In a contract so made the trustees are indeed principals, and section 3101, Civil Code, can afford them no relief, if that section may be invoked only in protection of a subordinate acting as the authorized substitute or representative of some identified person having contractual competency.

"Justice Holmes has taught us, however, that law does not always keep step with logic. And in an attempt to penetrate the meaning of words or phrases of a statute affecting common business transactions, it is not wise to take more thought of the husk than of the corn in the husk. Much of the confusion hitherto existing in the decisions, characterized by the United States Supreme Court in *Falk* v. *Moebs*, 127 U. S. 597 [32 L. Ed. 266, 8 Sup. Ct. Rep. 1319], as 'the anarchy of the authorities' and which led to the formulation of section 20 of the Negotiable Instruments Act, was caused by judicial blindness to mercantile usage and a straining after overnice distinctions, which have served but to perplex the man of affairs. Upon questions affecting negotiable instruments it is far more important to have uniform rules than inerrant logic; and uniform laws must necessarily fail of their purpose, unless there is uniformity in their interpretation and application. (*Utah State National Bank* v. *Smith,* 180 Cal. 1, 3, 4 [179 Pac. 160].)

"It becomes expedient then to ascertain the effect given elsewhere to the section in analogous situations.

"In *Kerby* v. *Ruegamer* [107 App. Div. 491], 95 N. Y. Supp. 408, parties who were engaged in the improvement of certain lands, having become financially embarrassed, conveyed the property to trustees for their creditors, with power in the trustees to complete the building operations and for that purpose to receive money under a building loan, and apply it in payment of existing claims as well as the expenses of completion. A note having been executed by the trustees officially, in renewal of an earlier note of the grantors, the payee in a suit upon the note demanded personal judgment against the trustees. Though the note made no reference to any particular trust, it was shown that the payee already had knowledge of the state of affairs; and accordingly he was not permitted to hold the trustees individually liable. In so ruling, the court spoke as follows (p. 412):

" 'The purpose of the statute is limited to putting the payee of such a note in possession of the knowledge that in its execution and delivery no personal liability was intended to be assumed by the makers, and where, as in this case, the payee knows that the makers are trustees, and the object and purposes of their trust, as well as their powers thereunder, has contracted with them in their representative capacity, and furnished certain property to be used in furtherance of their trust duties, and requests a note as an evidence of the indebtedness so created, it is not necessary, as to him, and the makers are not required to relieve themselves from personal liability on such note, to repeat to him in writing upon the face of the instrument, or orally, information that he already possesses. If it could be held that such a requirement was necessary, the evidence of Raunheim establishes that when the note was given the plaintiff was informed substantially that the defendants would not incur personal liability, and would not give their individual notes or indorsements, because they were acting as trustees only, which brings the case within the decision of *First National Bank* v. *Wallis*, 150 N. Y. 455 [44 N. E. 1038]. These facts furnish a complete defense to plaintiff's claim of individual liability, and abundantly satisfy the requirements of the Negotiable Instruments Law.'

"This ruling followed the views expressed in a similar case, *Megowan* v. *Peterson*, 173 N. Y. 1 [65 N. E. 738].

"It is asserted by plaintiff that in these cases the trustees were merely agents for the creditors. But the trustees in the cases cited, like those in the case at bar, were vested with the legal title and had entire control of the business in hand. While they were managing the property for the benefit of the creditors and the trustors, yet they, and not the creditors or the trustors, were the real masters. Thus in *Megowan* v. *Peterson*, 173 N. Y. 1, 6 [65 N. E. 738, 739], it is said:

" 'The creditors selected the defendant and then Johnson conveyed all the property of the firm to him as trustee for the creditors, thereby vesting the title to the property in him as trustee. We think therefore that, notwithstanding the fact that the word "agent" is used in the paper signed by the creditors, under the latter instrument the defendant became a trustee for the creditors and that it was in such character that he took possession of the property and undertook the liquidation of the assigned estate.'

"In *American Trust Co.* v. *Canevin*, 184 Fed. 657, suit was brought in Pennsylvania on a note signed on behalf of St. Thomas Roman Catholic Congregation by its treasurer and pastor, and also endorsed in the name of the congregation by the pastor, below whose name was written 'Regis Canevin, Trustee.' Regis Canevin was the bishop of the diocese and, as such, trustee of the church properties therein. Suit was brought against him alone in an effort to obtain a personal judgment.

"Speaking of the Negotiable Instruments Law, with quotations from section 20, the court said (p. 663):

" 'The Negotiable Instruments Law has been enacted in a large number of our states. Its uniform construction is most desirable. We are not dealing now with the indorsement of an executor, or administrator, or testamentary trustee, who, ordinarily, at least, had no power to bind his trust estate by a contract enforceable in a court of law, but with the indorsement of one who holds, in trust, the property of a religious society which, observing the rules and regulations of the society, he may sell or mortgage, or subject to liability for the payment of debts incurred by him in his representative capacity.'

"And the court held that since the evidence showed that the bishop intended to sign in his representative capacity only and that the payee and indorsee had knowledge of that

fact, and gave credit to the property represented by the bishop as trustee and not to him personally, it would be contrary to the intent of section 20 of the Negotiable Instruments Law and of the parties to construe the endorsement as a personal obligation.

"A similar situation, with like outcome, is exhibited also in *Chelsea Exchange Bank* v. *First United Presbyterian Church,* 89 Misc. Rep. 616 [152 N. Y. Supp. 201].

"Discussing the liability of a trustee as affected by such language, the supreme court of Kansas in *Hamilton* v. *Young,* 116 Kan. 128, 132 [35 A. L. R. 496, 225 Pac. 1045, 1046], expressed itself thus:

" 'Plaintiff says a trustee always acts as principal, there is no person, natural or artificial, for whom he can be agent, a trust estate cannot promise, and consequently, any obligation of the trustee is a personal obligation. Pressed to its logical conclusion, this doctrine would forbid a trustee from contracting that he shall not be personally liable, something which he may always do. The statute, however, does not stop with the relation of principal and agent in the technical and legal sense, but includes relations involving distinction between capacities.

" 'In business a person will always act in one of two capacities: first, in his personal capacity, whereby he binds himself and his own estate; and, second, the capacity in which he stands for some civil interest other than his own individual interest. There is no object in inserting the words "or in a representative capacity" in the statute, unless something other than the strict relation of principal and agent were meant. There could have been no purpose to include, for example, an executor of a will, who represents creditors, devisees, legatees, and distributees, and to exclude a testamentary trustee, who represents beneficiaries of the trust; and a trustee in the proper exercise of his authority acts in a representative capacity, within the meaning of the Negotiable Instruments Law. (*Megowan* v. *Peterson,* 173 N. Y. 1 [65 N. E. 738] [trustee for creditors]; *American Trust Co.* v. *Canevin,* 184 Fed. 657 [107 C. C. A. 543] [Roman Catholic bishop, trustee of property in his diocese, for his congregation]; *Wilson* v. *M. E. Zion Church;* 138 Tenn. 398 [198 S. W. 244] [trustee of unincorporated religious society].)'

"In regard to contracts for the benefit of an estate, the position of an executor is not essentially different from that of a trustee. And in *First National Bank of Salem* v. *Jacobs,* 85 W. Va. 653 [102 S. E. 491], the question arose as to the liability of an executrix upon a note to the bank which the defendant had signed thus: 'Winnie M. Jacobs, Exec. of Geo. M. Jacobs, deceased.'

"The note did not create a new obligation, but was in renewal of a previous obligation of the decedent; and in view of certain language in his will, it was held that the executrix had authority to execute a new note to take the place of the note of the testator.

"With such power in the executrix, the court was of the opinion that the form of the signature was sufficient under the Negotiable Instruments Act to indicate that payment was to be had only from funds of the estate. Thus the court said (p. 656):

"'Whatever the liability of the representative may have been at common law, the provisions of section 20, chapter 98a, commonly designated the Negotiable Instruments Law, relieve him from personal liability, if he signs in a representative capacity, disclosing his principal *or the estate represented,* and possesses the authority to execute the instrument.'

"In like manner in *Wolff* v. *Flateau* [206 App. Div. 134] 200 N. Y. Supp. 646, a note payable to 'Henry M. Flateau, Executor,' and endorsed by him in the same style to a legatee in satisfaction of a legacy, was treated as importing only the transfer of an asset of the trust estate without assumption of any personal liability by the executor.

"The distinction between the personal and the representative capacity is emphasized also in *Olpherts* v. *Smith,* [54 App. Div. 514], 66 N. Y. Supp. 976, affirmed in 173 N. Y. 593 [65 N. E. 1120]. There, a draft was drawn for goods purchased by a receiver authorized to carry on the business of a corporation. The draft was addressed 'To Receiver, Worcester Cycle Mfr. Co.'; and when presented, was accepted by writing across the face these words: 'Accepted, Frank Smith Sullivan, Receiver, Lewis F. Wilson, Attorney.'

"The draft not being paid when due, suit was brought against the receiver personally. At the trial verdict was

directed, however, in the receiver's favor, and the judgment was sustained on appeal, the court saying:

" 'We are, therefore, of the opinion that the defendant was expressly authorized to make the purchase, and that the Wilmot & Hobbs Manufacturing Company knew it was made by the defendant as receiver and not individually, and, with this knowledge, sold and delivered the merchandise to him and drew the draft in question, intending to give credit to the receivership alone. If we are correct in this conclusion, then it necessarily follows that the defendant did not personally obligate himself to pay the purchase price or the draft.'

"In the present case, the evidence leaves no doubt in my mind that the Sunset Lumber Company, the payee of the note in suit, knew of the limitation of liability set forth in the trust agreement, and was definitely informed also that for payment of its lumber it must look to the trust property alone; and that in fact credit was given to the trusteeship and not to the trustees. Plaintiff contends, however, that even if the Sunset Lumber Company itself had remained the holder, the unconditional terms of the body of the note could not be varied by evidence of limitations embodied in an independent instrument or by verbal communications made at or before the time of the execution of the note.

"But the law itself makes section 3101, Civil Code, part of the note, and that section is to be liberally construed in the interest of harmony. Hence, when the note and the statute are read together, with a liberal interpretation given to the word 'principal,' there is no variance of the terms of the note. The statute, liberally construed, says in substance that when the estate (or principal) is disclosed either in the body of the instrument or in the form of the signature, exemption from personal liability follows as effectually as if, after signing his name, the trustee had added, 'as trustee but not individually' or 'as trustee but not otherwise.'

"In *Shoe and Leather National Bank* v. *Dix*, 123 Mass. 148 [25 Am. Rep. 49], the court had before it a note (secured by mortgage) beginning, 'We as trustees but not individually promise to pay,' and signed by three individuals, opposite whose names was written the word 'Trustees.' The makers acted as trustees of a business association known as Brook-

line Avenue Association; and in an action on the note the attempt was made to charge the trustees personally.

"Referring, however, to the form of promise, the court said (pp. 150, 151):

" 'The construction contended for by the plaintiffs would require us to strike out the words ''but not individually''; although in so doing we should not only alter the contract, but should impose on them a liability which apparently they took special pains to avoid.

" 'It is to be borne in mind that this was not a case of agents acting for an undisclosed or unknown principal, . . . Neither was it an attempt by defendants to bind property over which they have no legal control. By the terms of the deed they had power to mortgage, lease and manage the property at their discretion, but for the benefit and on the account of the equitable owners, namely, the members of the Brookline Avenue Association. . . .

" 'It often has happened that an agent for another person, or the treasurer of a corporation, had made himself personally responsible by the form of words in which he has expressed himself in a written contract, when he may have intended to bind his principal only. . . . But we believe no case can be found in which a promise ''as trustee,'' etc., accompanied with an express disclaimer of personal liability, would fail to exempt him.

" 'It is contended that if these defendants are not liable upon the contract as a note, then nobody is liable. Even if such were the fact, it would not be in the power of the court, as we have already seen, to alter the contract for the purpose of giving it validity.'

"In *Bank of Topeka* v. *Eaton* 100 Fed. 8, affirmed 107 Fed. 1003, the note was made by 'the trustees of Topeka Land & Development Company, as such trustees, under deed of trust dated May 23, 1887, and not otherwise.' The deed of trust contained a provision that stipulation exempting trustees and members from liability should be inserted in all contracts. Such stipulation was omitted from the note in suit; but the court held that liability attached only to the trust property.

"Likewise in *Thayer* v. *Wendell*, 1 Gall. 37 [Fed. Cas. No. 13,873], the court reached the conclusion that a covenant of an executor 'in my capacity aforesaid, but not otherwise'

showed that he contracted in a particular and not a personal capacity, and hence could not be held privately responsible.

"There expounding the law, Judge Story said (p. 40):

" 'Now the clear exposition of the contract is—"I covenant in my capacity as executor, and as far as I can legally bind the estate of Erving, but I hereby expressly exclude myself from all personal responsibility in any event." . Now it. is quite. too plain for argument, that if the words.have:been as I have stated, there would have been no personal remedy. Can there be, when the words used require precisely the same exposition? · We are not at liberty to reject any words which are used in a contract when they are sensible in the place where they occur; much less have we any authority to change the entire nature of a contract from a particular to a general responsibility.' See, also, *Morehead Banking Co.* v. *Morehead,* 116 N. C. 413 [21 S. E. 190]; *Schmittler* v. *Simon,* 114 N. Y. 176 [11 Am. St. Rep. 621, 21 N. E. 162]; *Printup* v. *Trammel,* 25 Ga. 240; *In re Robinson's Settlement,* L. R. (1912) 1 Ch. 717, 728, 729.

"In the interest of commerce, it has been the policy of the law to exercise great tenderness toward the holders of commercial paper. Yet, after all, there is nothing sacrosanct about a promissory note; and section 20 of the Negotiable Instruments Act was meant to banish some of the extreme technicality which had led to confusion and incongruities in adjudicated cases in different jurisdictions. The provision granting personal exemption when the note indicates on its face that it was made on behalf of a disclosed principal, or by one filling a disclosed representative character and acting in his representative capacity, effectuates the desuetude of a vast array of technical and confusing precedents.

■ "Decisions, for example, may easily be found declaring that unless disclosure of the principal is made in the body of the note, the agent, whatever his powers, does not succeed in avoiding liability for himself by words of designation or description annexed to his signature. But the statute now provides that if proper indication of the representative capacity of the signer is given either in the note or in the signature, the disclosure is sufficient for his relief. Any phraseology which 'indicates' to the ordinary mind that the signature is made in a representative capacity will suffice for the purpose; and all persons dealing with the note

are bound to take cognizance of its indications and disclosures.

■ "In the note before us it would be vain to deny that the signature indicated the representative character of the signers, and at the same time met fully the requirements of the law in disclosing 'the principal' to be bound. The signature gave the business name of the principal, and that principal was specifically designated as 'A trust.' Consequently, when The Charles Nelson Company accepted transfer of the note from the payee, The Charles Nelson Company was charged with notice that Morton and Loser, describing themselves respectively as president and secretary of the 'Trustees of Greater San Francisco Speedway Association, a Trust,' were acting not as principals, but *in alieno jure* for a named trust, and that by force of the statute they were exempted from personal liability as fully as if the note had formally stated in its body that the obligation was that of the trustees 'in their capacity as trustees and not otherwise' or 'as trustees but not as individuals.'

"While they are not agents, the trustees have their duties to perform; and the effect of the statute is to charge them in respect of the property to which their representative duties attach; and not to require payment out of their private funds, in the event that the trust property should prove insufficient. In a case of agency, there is a principal to be charged; and in the case of a trusteeship there is the trust estate. The representative character in both cases has such kinship that under the broad language of the statute no well-founded distinction can be made as to the exemption from liability.

■ "The plaintiff contends, however, that if such a construction is given to section 3101 as to make only the trust property applicable to payment, that construction defeats its purpose, in that the note, it is said, would then be a note payable out of a particular fund and hence nonnegotiable, whereas section 3101 deals solely with negotiable instruments.

"I do not think, however, that a note, negotiable in its general form, is rendered nonnegotiable because executed by a trustee in a way to relieve him from personal liability. When a note is executed by trustees in their trust capacity exclusively, it carries the general credit of the trustees as such; and resort is not confined to any particular fund or

portion of the trust estate. All the existing trust property as well as future acquisitions and accumulations may be subjected to payment. The promise made on behalf of the estate, or principal, is as unconditional in its relation to the estate represented as that of an individual in relation to himself.

■ "In the case at bar the complaint alleges, and the agreement in evidence shows, that the trustees had power to bind the trust property for indebtedness incurred in the conduct of the business; and the note evidenced an indebtedness so incurred. It is asserted in the complaint that the trustees executed this particular note without authority, because they omitted to include the stipulation of personal exemption of the trustees, the certificate-holders and the trustors. According to my way of thinking, however, the power to incur indebtedness is wholly independent of the inclusion of the stipulation in the contract."

■ Two important rules of statutory construction in our judgment combine to require us to adopt the construction of section 20 of the Uniform Negotiable Instruments Law announced in the cases of *Kerby* v. *Ruegamer, Megowan* v. *Peterson, American Trust Co.* v. *Canevin, Hamilton* v. *Young,* and *First National Bank* v. *Jacobs,* cited *supra.* The first of these rules is laid down in *Utah State National Bank* v. *Smith,* 180 Cal. 1, at page 3 [179 Pac. 160, 161], where referring to the Uniform Negotiable Instruments Law, our Supreme Court said: "It is generally held that it is the duty of the courts in construing this law to have in mind the purpose of securing uniformity in the law of commercial paper." Whatever may be said of the decisions above referred to as a matter of strict logic they represent the overwhelming weight of authority in this country upon the construction of section 20 of the Negotiable Instruments Law when applied to notes executed by trustees of strict trusts. "As we view it, therefore, it is our plain duty to follow the numerous decisions that have directly passed upon the Negotiable Instruments Law, and have construed it in accordance with the majority rule. The question is one of business expediency, and not of logic or equity as applied to an individual case." (*Utah State National Bank* v. *Smith, supra,* at p. 4.)

██ The second rule is thus stated in *Ocean Acc. etc. Co.* v. *Industrial Acc. Com.*, 173 Cal. 313, 317 [L. R. A. 1917B, 336, 159 Pac. 1041, 1042]: "Under familiar principles, when a statute which has received judicial construction by the courts of one State is adopted and re-enacted by another State, it is so adopted and re-enacted in consonance with the construction put upon it by the courts of the first sovereignty. The common sense of this rule of construction is so apparent that it needs in its support nothing more than the obvious suggestion that if the later lawmakers did not design that the construction put upon any given language should obtain, they would modify and change that language to express their different intent." When the Negotiable Instruments Law was enacted in California section 20 had been construed to apply to the case of a strict trustee in *Kerby* v. *Ruegamer*, *Megowan* v. *Peterson*, and *American Trust Co.* v. *Canevin*, cited *supra*. We must presume that our legislature had those decisions in mind and was content to have the section so interpreted else they would have modified the language to express their different intent.

We have not been unmindful in the citation of the foregoing cases that in *Hamilton* v. *Young*, the Supreme Court of Kansas held that under the peculiar provision of the Constitution of that state a business trust is a corporation. But the court first took up and decided the case from the point of view of its being a pure or strict trust with no separate legal entity and concluded: "The result is that, on plaintiff's theory of a pure trust, he cannot recover on the note against Charles and Young as individuals." ██ This was not, as claimed by counsel for appellant, mere *obiter dictum;* for "where the court bases its decision on two or more distinct grounds, each ground so specified is, as much as any of the others, one of the grounds, a ruling upon questions involved in the case, and not 'mere *dictum.*'" (*King* v. *Pauly*, 159 Cal. 549, 555 [Ann. Cas. 1912C, 1244, 115 Pac. 210, 212].)

The case of *Schuling* v. *Ervin*, 185 Iowa, 1 [169 N. W. 686], largely relied on by counsel for appellant, is not in point on the question here involved. There the Second Christian Church was an incorporated society, as is clearly pointed out in the able dissenting opinion at page 689, and hence the trustees were not trustees of a strict or pure trust at all.

The argument of counsel for appellant that as so construed the note ceases to be a negotiable instrument because payable out of a particular fund, and therefore that section 20 would not be applicable to it may be further answered by pointing out that the same argument would be equally applicable to the cases from other jurisdictions which we have cited and relied upon. That question must be taken to be concluded by the decisions of those cases if the uniformity of decision sought to be obtained by the adoption of the Negotiable Instruments Law is not to be destroyed.

We believe it is sufficient to dispose of the cases of *Connor* v. *Clark*, 12 Cal. 168 [73 Am. Dec. 529], and *Hall* v. *Jamison*, 151 Cal. 606 [121 Am. St. Rep. 137, 12 L. R. A. (N. S.) 1190, 91 Pac. 518], to point out that they were decided before the adoption of the Uniform Negotiable Instruments Law in this state. In the interest of uniformity of decision we consider it our duty to follow the majority rule in other jurisdictions in the construction of section 20 of the Negotiable Instruments Law rather than decisions of our own state which antedate the adoption of that law. To do otherwise would be to create anew the same condition of "anarchy of the authorities" which the uniform law was designed to correct.

While realizing fully that a trustee of a pure trust has no principal in a strict technical sense we feel bound to follow the construction of section 20 adopted in the cases hereinabove cited, and we do so the more willingly because such construction is in our judgment in full accord with what would be the common interpretation of such an instrument so executed by business men and merchants among whom such instruments are commonly circulated and who are not generally versed in the nice refinements of the law. It was largely because of the introduction of the quibbles of judicial logicians into the construction of a common medium of exchange in the business world that the Uniform Negotiable Instruments Law was framed and adopted.

From another point of view and without regard to section 20 of the Negotiable Instruments Law we feel that the judgment of the trial court should equally be sustained. It has always been the law that by the insertion of apt words into the contract such as "as trustee but not individually" or "as trustee but not otherwise" the liability would be lim-

ited to the assets of the trust estate. (Cases cited *supra.*) In this case the note was signed:

> "Trustees of Greater San Francisco Speedway
> "Association (a Trust)
> "Frew Morton, Pres.
> "C. C. Loser, Sec."

On its face it is not the note of Morton and Loser but of the "Trustees of Greater San Francisco Speedway Association (a Trust)." Morton and Loser as agents or officers of the trustees signed the note in the name of the trustees as principals. By designating the makers as "Trustees" without otherwise or individually naming them it would seem that they had indicated an intention to bind the trustees solely as trustees and not as individuals as effectually as if they had inserted in the body of the note the words "solely as trustees" or some similar language. In other words, the signature, "Trustees of Greater San Francisco Speedway Association (a Trust)," cannot be construed as mere *descriptio personarum,* as those words might be construed if appended to the signatures of the individuals. The signature on its face is the signature of and purports to bind "Trustees" and only the trustees and not the individuals who compose the trustees; and under the findings of the court this is precisely the sense in which the note was understood by the payee at the time it was executed and delivered. In this connection the trial judge said: "Morton and Loser had power to sign for the trustees and the trustees had power to incur the indebtedness evidenced by the note. Hence from a technical standpoint it may be said that Morton and Loser in so signing were exhibiting themselves, not as trustees or principals, but rather as agents of the trustees of the trust named."

For the reasons given we conclude that the judgment should be and it is affirmed.

Nourse, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 25, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 28, 1930.